**Re: Appeal of SPRINGFIELD SCHOOL DISTRICT from the Decision of the Board of Assessment Appeals of Delaware County, Pennsylvania for the Year 2012 and Subsequent Tax Years Relating to the Property Located at the East Side of Woodland Avenue, North of Baltimore Pike, Springfield Township, Delaware County, Pennsylvania, Owned by VMDT Partnership.**

**Appeal of: VMDT Partnership.**

Commonwealth Court of Pennsylvania.

Argued May 12, 2014.
Decided Sept. 24, 2014.
Reargument or Rehearing En Banc Denied Nov. 7, 2014.

Joseph P. O'Brien, Media, for appellant.

Mark A. Sereni, Media, for appellees Springfield Township and Springfield School District.

BEFORE: BERNARD L. McGINLEY, Judge, and BONNIE BRIGANCE LEADBETTER, Judge, and JAMES GARDNER COLINS, Senior Judge.

OPINION BY Judge LEADBETTER.

VMDT Partnership (VMDT) appeals from the order of the Court of Common Pleas of Delaware County (trial court) that determined the fair market values and the assessed values of VMDT's properties for the tax years 2012 and 2013.

VMDT argues that the trial court should have assessed its properties based on the 1998 base-year market values, rather than the current market values as of the time of the assessment appeals filed by Springfield Township and the Springfield School District (collectively, School District). In the alternative, VMDT argues that the School District violated the Uniformity Clause of Article VIII, Section 1 of the Pennsylvania Constitution, Pa. CONST. art. VIII, § 1, in selecting its properties for assessment appeals. We conclude that the base-year valuation methodology advocated by VMDT is not supported by the statutory scheme of the Consolidated County Assessment Law, 53 Pa.C.S. §§ 8801–8868,[1] that the trial court's assessments of VMDT's properties are supported by the evidence accepted as credible, and that VMDT's uniformity challenge is without merit. Accordingly, we affirm.

I.

In June 2011, VMDT purchased two adjoining commercial properties, tax parcel 42-00-00487-00 (parcel 487) and tax parcel 42-00-07872-00 (parcel 7872), for $11,400,000. Parcel 487, located at 780 Baltimore Pike in Springfield Township, Delaware County, consists of 3.689 acres with a vacant 36,400-square-foot building previously occupied by Rothrock Chevrolet, an automobile dealership. Parcel 7872, located north of Baltimore Pike and east of Woodland Avenue, consists of 3.29 acres and was Rothrock Chevrolet's parking lot.

For the tax year 2012, parcels 487 and 7872 were assessed at $3,118,530 and $409,451, respectively. The common level ratio (CLR)[2] for Delaware County was 67.5% for 2012 and 72% for 2013. Applying the applicable CLRs to the assessed values, the implied fair market value of parcel 487 was $4,620,044 for 2012 ($3,118,530 ÷ 67.5%) and $4,331,292 for 2013 ($3,118,530 ÷ 72%). The implied fair market value of parcel 7872 was $606,594 for 2012 ($409,451 ÷ 67.5%) and $568,682 for 2013 ($409,451 ÷ 72%). The two parcels' combined implied fair market value was $5,226,638 for 2012 and $4,899,974 for 2013.

1. The Consolidated County Assessment Law enacted on October 27, 2010, effective January 1, 2011, applies to the counties of the second class A, third, fourth, fifth, sixth, seventh and eighth classes. Section 8801(b)(1)(i), 53 Pa.C.S. § 8801(b)(1)(i).

2. A "common level ratio" is "[t]he ratio of assessed value to current market value used generally in the county and published by the State Tax Equalization Board on or before July 1 of the year prior to the tax year on appeal before the board [of assessment appeals] under the act of June 27, 1947 (P.L. 1046 . . .), referred to as the State Tax Equalization Board Law." Section 8802 of the Consolidated County Assessment Law, *as amended*, 53 Pa.C.S. § 8802. The provisions of the State Tax Equalization Board Law, *formerly* 72 P.S. §§ 4656.1–4656.17, were repealed by the Act of April 18, 2013, P.L. 4, effective immediately. Similar provisions are now found in 71 P.S. §§ 1709.1500–1709.1521.

On July 29, 2011, the School District appealed the assessments with the Delaware County Board of Assessment Appeals (Board), alleging that VMDT's properties should be assessed for the tax year 2012 based on their fair market value of $11,400,000, the purchase price paid by VMDT. VMDT did not appeal the assessments of its properties for the tax year 2012. After a hearing, the Board denied the School District's appeals and did not change the assessments. The School District appealed the Board's decisions to the trial court. VMDT then filed a "counterclaim and new matter," alleging that the Board failed to properly assess its properties by applying the "established [p]redetermined [r]atio" (EPR) to the 1998 "base year" value,[3] and that the properties' "1998 [b]ase [y]ear [v]alue ... is less than the assessment set by the Board." VMDT's Counterclaim and Answer, ¶ 8. B and C; Reproduced Record (R.R.) at 29a–30a and 35a–36a. VMDT further alleged that the School District's selection of its properties for assessment appeals violated the uniformity requirement.

At *de novo* hearings held before the trial court, the School District's real estate appraiser, John B. Rush, testified that using the cost approach and the sales comparison approach, the fair market values of parcels 487 and 7872 as of August 1, 2011 and August 1, 2012 were $7,700,000 and $3,700,000, respectively, with a combined fair market value of $11,400,000. He did not utilize the income approach because he believed it was not reliable. In calculating the fair market values, he assumed that the building on parcel 487 was 40,875 square feet. He testified that if the size of the building was 36,400 square feet, the fair market value of the two parcels would be reduced to $10,900,000.

VMDT's real estate appraiser, Reaves C. Lukens, Jr., testified that VMDT asked him to estimate the value of VMDT's properties "as of January 1, 1998, based on its condition now, the market conditions as of that date," which he characterized as "a retrospective appraisal." Trial Court's April 8, 2013 Hearing, Notes of Testimony (N.T.) at 203; R.R. at 847a. He determined that the combined market value of the two parcels as of January 1, 1998 was $3,150,000 and that the market value remained the same "as configured on August 1, 2011, based on market conditions as of January 1, 1998." *Id.* at 218; R.R. at 862a.

To rebut Lukens' testimony, the School District presented the testimony of its real estate appraiser, Vincent Quinn. He disagreed with Lukens' method of using the 1998 base-year values to assess VMDT's properties. He found "it hard to believe that in the 2012 time frame ... a seller ... would sell a property under 1998 pric-

3. An EPR is "[t]he ratio of assessed value to market value established by the board of county commissioners and uniformly applied in determining assessed value in any year." Section 8802 of the Consolidated County Assessment Law. A "base year" is "[t]he year upon which real property market values are based for the most recent countywide revision of assessment of real property or other prior year upon which the market value of all real property of the county is based for assessment purposes." *Id.* Real property's "market values shall be equalized within the county," and "any changes by the board shall be expressed in terms of base-year values." *Id.* In Delaware County, a countywide reassessment of real property was last performed in 1998 and went into effect on January 1, 2000. Delaware County's EPR for the 1998 base year was 100%. The Board's assessment manager, John Van Zelst, testified that the base-year values of VMDT's properties as of January 1, 2000 were $3,118,530 and $347,990. The assessed value of parcel 7872 was increased to $409,471 in 2007. Trial Court's April 8, 2013 Hearing, Notes of Testimony at 113; Reproduced Record at 757a.

ing." April 9, 2013 Hearing, N.T. at 204; R.R. at 1117a. He also pointed out that Lukens failed to consider seven comparable sales of automobile dealerships after January 1, 1998.

The School District's executive director of operations, Donald Mooney, testified as to the School District's process of selecting properties for assessment appeals. Mooney reviews interim assessment reports and monthly real estate transfer reports and compares sale prices of real properties to their implied market values (the assessed values divided by the CLR). He selects properties, whose sale prices are $500,000 or greater than the implied market values, for possible assessment appeals. He explained that the $500,000 threshold represents $9000 to $11,000 in additional tax revenue, which justifies the costs of assessment appeals. The School District's solicitor and appraiser thereafter further review the properties selected by Mooney to determine whether it is worthwhile to pursue assessment appeals. When the School District Board of Directors approves the solicitor's recommendation, the School District files assessment appeals.

Mooney learned of VMDT's June 2011 purchase of the properties from the School District's solicitor and appraiser before he received a monthly real estate transfer report. Because the purchase price of $11,400,000 exceeded the combined implied fair market value of $5,226,638 by more than $6,000,000, Mooney reviewed VMDT's properties for possible assessment appeals. After further review by the School District's solicitor and appraiser, all nine members of the School District Board of Directors approved the appeals. Mooney performed a "follow-up analysis" of VMDT's properties after he received a monthly transfer report. April 9, 2013 Hearing, N.T. at 12; R.R. at 924a. The member of the School District Board of Directors, Domenic Bentivegna, corroborated Mooney's testimony.

The trial court rejected VMDT's argument that its properties should be assessed for the tax year 2012 based on the 1998 base-year market values. The court concluded that Section 8854(a)(9)(i) of the Consolidated County Assessment Law, *as amended,* 53 Pa.C.S. § 8854(a)(9)(i), relied on by VMDT, does not support such valuation methodology. Section 8854(a)(9)(i) provides that "[n]othing in this subsection shall ... [p]revent an appellant from appealing a base-year valuation without reference to ratio." The Court stated that Section 8854(a)(9)(i) merely protects a right to appeal a base-year valuation without challenging an applicable ratio. The court further concluded that VMDT could not appeal the 1998 base-year valuation in 2011 after expiration of the 40–day appeal period set forth in Section 8844(b) of the Consolidated County Assessment Law, *as amended,* 53 Pa.C.S. § 8844(b).[4]

4. Section 8844(a) and (b) of the Consolidated County Assessment Law provides:

 **(a) Notices.**—The county assessment office shall mail to each record property owner ... and to the affected taxing districts notice of *any change in assessment or new assessment* made pursuant to section 8841(c)(relating to assessment roll and interim revisions). The notice shall state:

 (1) Mailing date.
 (2) Property location.
 (3) Parcel identifier.
 (4) Effective date.
 (5) [EPR].
 (6) Base-year value.
 (7) Old assessment.
 (8) New assessment, including the assessment of each parcel of land and the assessed value of any improvements.

 **(b) Mailing and notice of appeal.**—The notice shall be mailed within five days from the date the county assessment office makes *the change or addition to its official records.* The notice shall state that any persons ag-

Accepting the testimony of the School District's appraisers as credible and rejecting the testimony of VMDT's appraiser, the trial court first set the fair market values of parcels 487 and 7872 as of August 1, 2012 and August 1, 2013 at $7,200,000 and $3,700,000, with the combined fair market value of $10,900,000, pursuant to Section 8854(a)(2)(i) of the Consolidated County Assessment Law. As required by Section 8854(a)(3), the court then applied the CLR of 67.5% for the tax year 2012 and 72% for the tax year 2013 to the fair market values to set the assessed value of parcel 487 at $4,860,000 for 2012 and $5,184,000 for 2013, and the assessed value of parcel 7872 at $2,497,500 for 2012 and $2,664,000 for 2013. The court rejected VMDT's uniformity challenge, concluding that the School District's adoption of a methodology to narrow the class of properties for appeals and use of available statutory appeals to legally increase its revenue do not constitute a deliberate and purposeful discrimination. VMDT's appeals to this Court followed.

## II.

■ VMDT argues that the trial court erred in failing to assess its properties based on the 1998 base-year market values, "as [they are] configured and exist[ ] on August 1, 2011 and August 1, 2012," and that it presented competent and credible evidence to establish such values. VMDT's Brief at 8. VMDT further argues that the trial court erred in concluding that the base-year valuation can be appealed only in the year of a countywide reassessment.

■ The School District counters that VMDT did not and could not appeal the 1998 base-year valuation in 2011. According to the School District, the former owner of VMDT's properties, represented by VMDT's counsel, already appealed the base-year assessment in 2000. The School District argues that Section 8854(a)(9), allowing an appellant to appeal a base-year valuation without reference to ratio, does not provide for an alternative base-year valuation methodology, and that such methodology, if accepted, would lead to an absurd result of permitting an owner whose property value has sharply risen over the years to pay less tax than an owner whose property value has remained static.[5]

■ Article VIII, Section 1 of the Pennsylvania Constitution provides that "[a]ll taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws." This constitutional uniformity requirement is based on the general principle that "taxpayers should pay no more or less than their proportionate share of government." *Downingtown Area Sch. Dist. v. Chester Cnty. Bd. of Assessment Appeals*, 590 Pa. 459, 913 A.2d 194, 199 (2006). To meet the uniformity requirement, "all property must be taxed uniformly, with the same ratio of the assessed value to actual value applied throughout the taxing jurisdiction." *Clifton v. Allegheny Cnty.*, 600 Pa. 662, 969 A.2d 1197, 1224 (2009).

grieved by the assessment and the affected taxing districts may file an appeal to the board *within 40 days of the date of the notice.* [Emphasis added.]

**5.** Our review in these assessment appeals is limited to determining whether the trial court

committed an error of law or reached a decision not supported by substantial evidence. *Jackson v. Bd. of Assessment Appeals of Cumberland Cnty.*, 950 A.2d 1081, 1085 n. 4 (Pa. Cmwlth.2008).

 Section 8842(a) of the Consolidated County Assessment Law, 53 Pa.C.S. § 8842(a), provides:

> *The county assessment office shall assess real property at a value based upon an [EPR] which may not exceed 100% of actual value.* The ratio shall be established and determined by the board of county commissioners by ordinance. *In arriving at actual value, the county may utilize the current market value or it may adopt a base-year market value.* [Emphasis added.]

An actual value is a market value or a fair market value, i.e., the price which a purchaser, willing but not obliged to buy, would pay an owner, willing but not obliged to sell, taking into consideration all uses to which the property is adapted and might in reason be applied. *Green v. Schuylkill Cnty. Bd. of Assessment Appeals*, 565 Pa. 185, 772 A.2d 419, 425 n. 6 (2001).[6]

Section 8844(c)(1) of the Consolidated County Assessment Law provides that "[a]ny person aggrieved by any assessment, whether or not the value thereof shall have been changed since the preceding annual assessments, or any taxing district having an interest in the assessment, may appeal to the board for relief" on or before September 1 or the date designated by the county commissioners. In an assessment appeal, the board must make the following determinations:

> In any assessment appeal, the board shall determine *the market value of the property as of the date such appeal was filed before the board* and shall apply the [EPR] to that value, unless the [CLR] last published by the State Tax Equalization Board [7] varies by more than 15% from the [EPR], *in which case the board shall apply that same [CLR] to the market value of the property.*

Section 8844(e)(2) (emphasis added).

In an appeal from the board's decision, the trial court conducts a *de novo* review and must assess a real property as follows:

> (2) In any appeal of an assessment the court shall make the following determinations:

---

6. To determine an actual value, the cost approach, the comparable sales approach and the income approach must be considered in conjunction with one another. Section 8842(b)(1)(iii) of the Consolidated County Assessment Law. The cost approach considers reproduction or replacement costs of the property, less depreciation and obsolescence. *Jackson*, 950 A.2d at 1084 n. 1. The comparable sales approach compares sale prices of similar properties with considerations given to their size, age, physical condition, location and other factors. *Id.* Under the income approach, the property's annual net rental income is divided by an investment rate of return. *Id.* The price at which a property may actually have been sold in the base year or in the current taxable year must be considered in determining an actual value, but it "shall not be controlling." Section 8842(b)(1)(i).

7. The State Tax Equalization Board must establish a CLR for each county, using "statistically acceptable techniques, including sales ratio studies," and certify it to the chief assessor of each county. Section 1709.1516a(b) of the State Tax Equalization Board Law, added by Section 1 of the Act of April 18, 2013, P:L. 4, 71 P.S. § 1709.1516a(b). To determine a CLR, the State Tax Equalization Board uses a methodology known as "[t]he aggregate market value approach" or "sales ratio studies." 61 Pa.Code § 603.1. The purpose of such approach is "to ascertain the average percentage ratios of masses of assessed valuations to masses of bona fide selling prices or properties transferred." *Id.* The average assessment-sales ratios are then used to convert aggregate assessments into aggregate market values. *Id.* As part of the assessment-sales ratio studies, the State Tax Equalization Board develops "market value conversion indexes" using bona-fide real property transfers reported monthly by the counties. 61 Pa. Code § 603.31(a) and (b).

(i) *The market value as of the date the appeal was filed before the board.* In the event subsequent years have been made a part of the appeal, the court shall determine the market value for each year.

(ii) *The [CLR] which was applicable in the original appeal to the board.* In the event subsequent years have been made a part of the appeal, the court shall determine the applicable [CLR] for each year published by the State Tax Equalization Board on or before July 1 of the year prior to the tax year being appealed.

(3) The court, after determining the market value of the property pursuant to paragraph (2)(i), shall then apply the [EPR] to that value unless the corresponding [CLR] determined pursuant to paragraph (2)(ii) varies by more than 15% from the [EPR], *in which case the court shall apply the applicable [CLR] to the corresponding market value of the property.*

Section 8854(a)(2) and (3) (emphasis added).[8]

■ Under the clear and unambiguous language in Sections 8844(e)(2) and 8854(a)(2) and (3), the board and the trial court must first determine *the current market value* and then apply the EPR or the CLR to that value to arrive at actual value, regardless of whether the county has chosen a base-year market value or a current market value. *See Daugherty v. Cnty. of Allegheny,* 920 A.2d 936, 940 (Pa. Cmwlth.2007)· (holding that "the first un-

dertaking of the Board is to determine a property's 'current market value' … *regardless of what methodology has been chosen by the assessor to establish a taxable property's 'actual value'* ") (emphasis added). *See also* BERT M. GOODMAN & RANDY L. VARNER, ASSESSMENT LAW & PROCEDURE IN PENNSYLVANIA 33 (2012) (stating that the board and the trial court "must first determine the property's fair market value *regardless of the methodology that has been used by the assessor* ") (emphasis added).

It is fundamental that "[e]very statute shall be construed, if possible, to give effect to all its provisions." Section 1921(a) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1921(a). In insisting that its properties should be assessed based on their 1998 base-year values, VMDT totally disregards Sections 8842(e)(2) and 8854(a)(2) and (3). VMDT's position, if accepted, would render those provisions mere surplusage and meaningless.[9]

There is no conflict between Section 8842(a), allowing a county assessor to use the current year market value or adopt the base-year market value, as the Delaware County did in 1998, to arrive at the property's actual value, and Sections 8844(e)(2) and 8854(a)(2) and (3), requiring the board and the court to assess the property by applying an EPR or a CLR to a current market value, when an appeal is taken.

The EPR which the county commissioners are required to set under Section 8842(a) of the Consolidated County Assessment Law is "the county's intended ratio

8. In *Downingtown,* the Supreme Court held that a taxpayer has a right to present a uniformity challenge, even where a CLR varies from an EPR by less than 15%.

9. Sections 8844(e)(2) and 8854(a)(9) of the Consolidated County Assessment Law, allowing an appellant to appeal a base-year valuation without reference to ratio, merely per-

mits an assessment appeal "based solely upon the valuation of property, or solely upon assessed ratio, or both." *Monroe Cnty. Bd. of Assessment Appeals v. Miller,* 131 Pa.Cmwlth. 538, 570 A.2d 1386, 1389 (1990). Those provisions do not in any way provide for the base-year valuation methodology advanced by VMDT.

of assessed value to market value for any given tax year." *Downingtown*, 913 A.2d at 202 n. 13. It "does not represent a true assessment by the county of the ratio of assessed value to market value ... which would ... vary annually where property values change." *Id.* Rather, it is "a fixed number ... which is generally held constant pending county-wide reassessments." *Id.* Thus, a prolonged use of the base-year value to assess a property may result in violating the uniformity requirement. As our Supreme Court observed:

> Property values may change over time and at different rates, but when a taxing body freezes values with, for instance, the prolonged use of a base years' property values, the resulting disparities throughout the taxing jurisdiction produce inequities, and those inequities tend to increase over time.... The farther away from the base year a county gets, the more likely the county's PRD [price-related differential] [10] will become either regressive or progressive, as the property values in different neighborhoods change at varying rates.

*Clifton*, 969 A.2d at 1225.

In *Appeal of Armco, Inc.*, 100 Pa. Cmwlth. 452, 515 A.2d 326 (1986), this Court considered Sections 602 and 704 of The Fourth to Eighth Class County Assessment Law, Act of May 21, 1943, P.L. 571, *as amended, formerly* 72 P.S. §§ 5453.602 and 5453.704, repealed by Section 6(1)(ii) of the Act of October 27, 2010, P.L. 895, which were virtually identical to Sections 8842(a), 8844(e)(2) and 8854(a)(2) and (3) of the Consolidated County Assessment Law. Section 602 required Butler County to assess real property by applying ·an EPR to actual value of real property and allowed it to utilize the current market value or adopt a base-year market value in

arriving at actual value. Section 704 then required the court on appeal to first determine a current market value and apply the EPR or the CLR, if the CLR varied by more than 15% from the EPR, to the current market value to determine an assessed value.

Butler County, which had established an EPR and adopted the base-year value, argued that the assessment statute violated the uniformity requirement because it required the use of one method for assessing real property administratively and another method for assessing real property for taxpayers who filed an assessment appeal. In rejecting Butler County's argument, this Court distinguished the county assessor's "administrative method" of assessing real property using the base-year market value and "a method of *reviewing* " the administrative assessments. *Appeal of Armco*, 515 A.2d at 329 (emphasis in original). The Court elaborated:

> Taking into account that a countywide assessment or reassessment may take several years to accomplish, section 602 provides an efficient administrative method of assessing real estate by permitting a county to use a base year market value which may or may not reflect the property's current year market value, and for the sake of constancy with respect to ratio—avoiding annual changes of ratio—permits the county to use a predetermined ratio not exceeding 75%. However, section 704 provides counties with an incentive to maintain the consistency and integrity of their administrative assessments by establishing a method of *reviewing* administrative assessments that is based upon applying the STEB [State Tax

---

**10.** A PRD is "a widely accepted indicator of inequity between high-value properties and low-value properties." *Clifton*, 969 A.2d at 1216.

Equalization Board] [CLR] to a property's current market value.

. . . .

Unlike the review assessment method of section 704, the administrative assessment method of section 602 appears to assume constancy in the value of real estate. Therefore, the administrative method is immune to dynamic factors which operate to cause a piece of real estate's value to appreciate or depreciate. Accordingly, unremitting adherence to the administrative method could distort the assessment picture. A taxpayer could pay substantially more or less than his proportionate share of government by paying taxes based upon a predetermined ratio of a property's base year value where the current market value is, in fact, substantially less or greater than its base year value.

However, our conclusion is that the Law, by coupling section 704 with section 602, recognizes that administrative assessments may not be perfect and that values will not be constant.

. . . .

Quite apparently, the Law's theory is that, by holding out to property owners the opportunity to take appeals which can test the base-year value predetermined-ratio equation, the results of those appeals will inform the county and force it to monitor and reform its assessment levels to reflect reality. The STEB [CLR] operates as a multiplier used to convert current market values to equivalent base-year assessed values. Here, the county failed to make that conversion.

*Id.* at 329–30 (emphasis in original).

More recently in *Daugherty,* this Court considered the provisions of the Act of June 21, 1939, P.L. 626, commonly known as the Second Class County Assessment Law, *as amended,* 72 P.S. §§ 5452.1–5452.20. Section 4 of the Law, 72 P.S. § 5452.4, required the Allegheny County Board of Property Assessment Appeals and Review to assess real property at a value based on an EPR which may not exceed 100% of actual value and allowed Allegheny County to use a current market value or adopt a base-year market value to arrive at actual value. Section 10 of the Second Class County Assessment Law, 72 P.S. § 5452.10, then required the Board to determine, in an assessment appeal, the current market value for the tax year in question and the CLR, and to apply the EPR or the CLR, if the CLR varies from the EPR by more than 15%, to assess real property. Allegheny County, which had adopted the base-year market value to arrive at actual value, argued that allowing a taxpayer to use the property's current market value on appeal nullified its right to choose an assessment methodology.

We found no conflicts in the provisions of the Law. Citing *Appeal of Armco,* the Court held that an assessment appeal "inject[s] flexibility into the process so that the assessor's 'actual value' could be corrected where it [is] wrong *either because the base-year market value was incorrect or because the market value changed." Daugherty,* 920 A.2d at 941 (emphasis added). We reaffirmed that the Law provided "the ability to challenge [the] assessment for the reason that the base year market value no longer reflects the property's current market value." *Id.* at 943.

The base-year valuation methodology advanced by VMDT is inconsistent with this Court's holdings in *Appeal of Armco* and *Daugherty* and must be rejected. Such methodology is not supported by the statutory scheme of the Consolidated County Assessment Law intended to provide the flexibility in assessing real property and, if accepted, would fail to assess real property "with the same ratio of the

assessed value to actual value" because it ignores any changes in real property's actual value since the base year. *Clifton*, 969 A.2d at 1224. The evidence presented at the trial court's *de novo* hearings demonstrated that the 1998 base-year values of VMDT's properties no longer reflected their current market values. We conclude, therefore, that the trial court correctly assessed VMDT's properties for the tax years 2012 and 2013 based on their current market values, as required by Section 8854(a)(2) and (3).[11]

■ An actual or market value must be determined based on competent, relevant evidence. *Deitch Co. v. Bd. of Prop. Assessment, Appeals, Review of Allegheny Cnty.*, 417 Pa. 213, 209 A.2d 397, 403 (1965). In a tax assessment appeal, the trial court is the fact-finder and has the authority to weigh evidence and make credibility determinations. *In re Sullivan*, 37 A.3d 1250, 1256 (Pa.Cmwlth.2012). The trial court's function in a tax assessment is not to independently value the property but to weigh the conflicting testimony and arrive at a valuation based on the credibility of witnesses. *Macy's Inc. v. Bd. of Prop. Assessment, Appeals, Review of Allegheny Cnty.*, 61 A.3d 361, 365 (Pa. Cmwlth.2013). The trial court's findings are entitled to great deference, and its decision will not be disturbed absent a clear error. *Hershey Entm't & Resorts Co. v. Dauphin Cnty. Bd. of Assessment Appeals*, 874 A.2d 702, 706–07 (Pa.Cmwlth. 2005).

■ In determining the current fair market values, the trial court accepted the testimony of the School District's appraisers as credible and rejected the testimony of VMDT's appraiser. The court noted that VMDT did not present any evidence of its properties' current market values and that VMDT's appraiser did not make a separate valuation for each parcel and relied on the incorrect combined acreage of the two parcels on the maps, which were "intended for display purposes only and [were] not intended for any legal representations." VMDT's Exhibit 3A and 3B; R.R. at 169a–170a. Because the court's determinations of the fair market and assessed values of VMDT's properties are

---

11. We disagree with the trial court's conclusion that a challenge to the base-year valuation must be made within 40 days after a notice of such valuation. Under Section 8841(c) of the Consolidated County Assessment Law, 53 Pa.C.S. § 8841(c), the county assessment office is authorized "to make additions and revisions to the assessment roll at any time in the year to change the assessments of existing properties." The county assessment office must mail "notice of any change in assessment or new assessment pursuant to section 8841(c)" within 5 days, and an appeal challenging such notice must be filed within 40 days of the notice. Section 8844(a) and (b). The matter *sub judice*, however, does not involve additions or revisions to the assessment roll. Under Section 8844(c)(1), "[a]ny person aggrieved by any assessment, *whether or not the value thereof shall have been changed since the preceding annual assessment*, or *any taxing district* having an interest in the assessment, may appeal to the board for relief." (Emphasis added.) The annual assessment is "a new event that puts the assessor's work in play." *Daugherty*, 920 A.2d at 942. When the relevant provisions of the Consolidated County Assessment Law are construed together, a base-year valuation may be challenged in an appeal from the annual assessment. The statutory remedy provided by the Consolidated County Assessment Law "is exclusive and mandatory." *In re Rausch Creek Land, L.P.*, 59 A.3d 1, 6 (Pa.Cmwlth.2012), *appeal denied*, 621 Pa. 674, 74 A.3d 1032 (2013). At all events, regardless of *when* an appeal challenging the base-year valuation may be filed, VMDT did not appeal the assessment of its properties for 2012 and, therefore, could not challenge the base-year valuation before the trial court. *See Krug v. City of Phila.*, 152 Pa.Cmwlth. 475, 620 A.2d 46, 48–49 (1993) (holding that "all defenses against the tax assessment which should have been raised before the Board are waived").

based on a credibility determination, they may not be disturbed on appeal.

## III.

VMDT alternatively argues that the School District violated the Uniformity Clause of Article VIII, Section 1 of the Pennsylvania Constitution in selecting its properties for assessment appeals. VMDT maintains that the School District's method of selecting for appeals properties whose sale prices exceed implied market values by $500,000 or more is arbitrary, capricious and discriminatory. VMDT submits that almost all residential properties would be excluded from assessment appeals under the $500,000 threshold and that the School District ignored its own selection process by appealing the assessments of VMDT's properties before it received a monthly transfer report. VMDT asserts that the School District failed to appeal the assessments of other commercial properties transferred for a nominal consideration of $1 or $10, incorrectly assuming that all of those transfers involved refinancing. VMDT claims that actual sale prices of some of those properties exceeded the implied market values by more than $500,000. VMDT further claims that the School District did not appeal the assessments of properties with a substantially lower assessment-to-sale-price ratio than VMDT's properties. VMDT describes the School District's process of selecting properties for appeals as "a lottery system." VMDT's Brief at 13.

 As to matters of taxation, the Equal Protection Clause of the United States Constitution and the Uniformity Clause of the Pennsylvania Constitution are analyzed "coterminously." *Downingtown*, 913 A.2d at 201 n. 9. Under the Uniformity Clause, all real estate must be treated as a single class entitled to uniform treatment. *Clifton*, 969 A.2d at 1212.

Taxation, however, is not a matter of exact science; therefore, "absolute equality and perfect uniformity are not required to satisfy the constitutional uniformity requirement." *Id.* at 1210. So long as the taxing scheme "does not impose substantially unequal tax burdens, rough uniformity with a limited amount of variation is permitted." *Id.* at 1210–11. A taxpayer alleging that the administration of tax violates the uniformity requirement must demonstrate deliberate, purposeful discrimination in the application of the tax. *Weissenberger v. Chester Cnty. Bd. of Assessment Appeals*, 62 A.3d 501, 505 (Pa.Cmwlth.), *appeal denied*, 621 Pa. 685, 76 A.3d 540 (2013). The term "deliberate" in this context connotes "wrongful conduct," including "any intentional or systematic method of enforcement of the tax laws." *Downingtown*, 913 A.2d at 201 n. 10.

 The School District is "a taxing district" with no power to prepare or revise assessment rolls, value property, make or change a valuation of property, or establish an EPR. *In re Springfield Sch. Dist.*, 879 A.2d 335, 341 (Pa.Cmwlth.2005). A taxing district, however, has "the right to appeal any assessment within its jurisdiction in the same manner, subject to the same procedure and with like effect as if the appeal were taken by a taxable person with respect to the assessment." Section 8855 of the Consolidated County Assessment Law, 53 Pa.C.S. § 8855. Neither a taxing district nor a taxpayer is prohibited from appealing an assessment even in the absence of any triggering event, such as an improvement or subdivision of property. *Millcreek Twp. Sch. Dist. v. Erie Cnty. Bd. of Assessment Appeals*, 737 A.2d 335, 338 (Pa.Cmwlth.1999). In addition, there are "no restrictions on the 'methodology' employed by a school district or by an individual property owner in determining whether to appeal." *In re Springfield Sch.*

*Dist.,* 879 A.2d at 341. A change in assessment "resulting from an appeal to the board by a taxpayer or taxing district shall not constitute a spot reassessment."[12] Section 8843 of the Consolidated County Assessment Law, 53 Pa.C.S. § 8843.

In *Vees v. Carbon County Board of Assessment Appeals,* 867 A.2d 742 (Pa. Cmwlth.2005), the subject property was reassessed at $92,250 for the tax year 2001 following the countywide reassessment. In 2002, the taxpayers purchased the property for $170,000. The school district appealed the assessment of the taxpayers' property. The assessment board then increased the fair market value of the taxpayers' property to $161,900. On appeal, the trial court refused to admit the evidence offered by the taxpayers to establish the school district's policy of appealing assessments of properties whose purchase price exceeded the assessed value by $15,000. Before this Court, the taxpayers argued that the school district's appeal policy constituted a spot reassessment and violated the uniformity requirement. This Court rejected the argument, concluding that "[a]s a matter of law, the School District's use of the statutory appeal mechanism available uniformly to all interested parties does not amount to deliberate, purposeful discrimination." *Id.* at 749.

Subsequently in *Weissenberger,* this Court again considered the taxpayer's challenge to the school district's method of selecting properties for assessment appeals. In *Weissenberger,* a real estate appraisal firm hired by the Chester County School District Managers reviewed the assessments of all apartment complexes in Chester County for the tax year 2004 and their market values. The firm found that five of the potentially under-assessed properties were located in the Downingtown Area School District. As the firm recommended, the school district appealed only the assessments of two apartment complexes owned by the taxpayer. The Chester County Board of Assessment Appeals then increased the fair market value of each of the taxpayer's properties by approximately $1 million, which represented additional $53,000 in annual tax revenue for the school district. The taxpayer contended that the school district treated his apartment complexes differently than other under-assessed apartment complexes and that the school district's method of selecting properties for assessment appeals demonstrated an intentional, selective and discriminatory application of the right to appeal.

This Court rejected the taxpayer's contentions, stating: "[I]t is easy to envision a rational basis for the School District taking these appeals: sufficient increased revenue to justify the costs of appeals. Judicious use of resources to legally increase revenue is a legitimate governmental purpose." *Weissenberger,* 62 A.3d at 506. The Court concluded that "adopting a methodology that narrows the class of properties evaluated for appeal based upon considerations such as financial and economic thresholds or by classifications of property do not as a matter of law demonstrate deliberate, purposeful discrimination." *Id.* at 509.

VMDT attempts to distinguish *Weissenberger,* stating that Mooney who initially reviewed properties for possible appeals was not a certified appraiser. The Consolidated County Assessment Law, however, does not require a certified appraiser's review before filing an assessment appeal.

---

12. A "spot reassessment" is "[t]he reassessment of a property or properties by a county assessment office that is not conducted as part of a countywide revision of assessment and which creates, sustains or increases disproportionality among properties' assessed values." Section 8802 of the Consolidated County Assessment Law.

The School District established that it had the information about the sale of VMDT's properties, that its appraiser and solicitor reviewed the properties selected by Mooney, and that the School District Board of Directors approved the appeals. The fact that the School District filed the appeals before receiving the monthly transfer report is irrelevant. Even filing a selective appeal based solely upon "a perception that property was undervalued does not constitute deliberate and purposeful discrimination." *Weissenberger*, 62 A.3d at 508.

■ The School District's $500,000 threshold was based on the reasonable financial and economic considerations of increasing its revenue and the costs of filing assessment appeals. The $500,000 difference between the sale price and the implied market value represented $9000 to $11,000 in additional tax revenue, which justified the costs of appeals. As in *Vees* and *Weissenberger*, the method adopted by the School District to select properties for assessment appeals is not arbitrary, capricious or discriminatory. The fact that the $500,000 threshold would mostly subject commercial properties to assessment appeals does not warrant a different conclusion. The Uniformity Clause "does not require equalization across all potential sub-classifications of real property (for example, residential versus commercial)." *Downingtown*, 913 A.2d at 201 n. 9 [citing *Allegheny Pittsburgh Coal Co. v. Cnty. Comm'n of Webster Cnty.*, W.Va., 488 U.S.

336, 344, 109 S.Ct. 633, 102 L.Ed.2d 688 (1989) ].[13]

VMDT does not dispute that Mooney's exclusion of the properties with a nominal consideration of $1 and $10 from his initial reviews was based on his incorrect assumption that all transfers of those properties involved refinancing, which does not establish that he engaged in deliberate, purposeful discrimination. Further, the fact that five properties in the monthly transfer reports had the assessment-to-sale-price ratios ranging from 42.20% to 49.60%, lower than the applicable CLR, does not support VMDT's uniformity challenge. As VMDT acknowledges, those properties were excluded from Mooney's initial review because they did not meet the $500,000 threshold.

■ Finally, VMDT claims that other under-assessed properties were not selected for appeals, relying on their assessed values and sale prices listed in the monthly transfer reports. In uniformity litigation, however, the taxpayer "must first establish various valuations at issue, and then demonstrate how the disparate ratios of assessed-to-market value violate the uniformity requirement." *Clifton*, 969 A.2d at 1214. VMDT did not present any evidence of the market values of the allegedly under-assessed properties. In determining market values, the sale prices must be considered but "shall not be controlling." Section 8842(b)(1)(i) of the Consolidated County Assessment Law. As this Court has stated:

---

13. In *Allegheny Pittsburgh Coal Co.*, the United States Supreme Court stated:

A State may divide different kinds of property into classes and assign to each class a different tax burden so long as those divisions and burdens are reasonable.... It might, for example, decide to tax property held by corporations, including petitioners, at a different rate than property held by individuals.... In each case, "[i]f the selec-

tion or classification is neither capricious nor arbitrary, and rests upon some reasonable consideration of difference or policy, there is no denial of the equal protection of the law."

*Id.* at 344, 109 S.Ct. 633 (citations omitted) [quoting *Brown–Forman Co. v. Kentucky*, 217 U.S. 563, 573, 30 S.Ct. 578, 54 L.Ed. 883 (1910) ].

"Where a property owner presents proof of assessments of comparable properties but fails to offer any evidence as to market value, the property owner cannot sustain his burden of proof as a matter of law in that the common pleas court has no information upon which to make a finding as to the current market value and apply the [EPR] [or the CLR] to determine the issue of uniformity."

*Finter v. Wayne Cnty. Bd. of Assessment Appeals,* 889 A.2d 678, 682 (Pa.Cmwlth. 2005) [quoting *Albarano v. Bd. of Assessment & Revision of Taxes & Appeals,* 90 Pa.Cmwlth. 89, 494 A.2d 47, 49 (1985)]. VMDT, therefore, cannot rely only on the assessments and the sale prices of the allegedly under-assessed properties listed in the monthly transfer reports, without establishing their market values, to support its uniformity challenge.

In conclusion, the trial court did not .commit an error of law in assessing VMDT's properties based on their current market values, and the court's assessments are supported by the evidence accepted as credible. In addition, VMDT failed to establish that the School District engaged in deliberate, purposeful discrimination in selecting VMDT's properties for assessment appeals. Accordingly, we affirm the trial court's order.

### *ORDER*

AND NOW, this 24th day of September, 2014, the order of the Court of Common Pleas of Delaware County in the above-captioned matters is AFFIRMED.