# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Colonial School District | : | |
| | : | |
| v. | : | No. 530 C.D. 2019 |
| | : | Submitted: March 24, 2020 |
| Montgomery County Board of | : | |
| Assessment Appeals, Metroplex West | : | |
| Associates, L.P., Plymouth Township | : | |
| and Montgomery County | : | |
| | : | |
| Appeal of: Metroplex West Associates, | : | |
| L.P. | : | |

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
          HONORABLE RENÉE COHN JUBELIRER, Judge
          HONORABLE ANNE E. COVEY, Judge

OPINION
BY PRESIDENT JUDGE LEAVITT                    FILED: May 28, 2020

Metroplex West Associates, L.P. (Taxpayer) appeals an order of the Court of Common Pleas of Montgomery County (trial court) that denied Taxpayer's petition to dismiss Colonial School District's appeal of Taxpayer's assessment as unconstitutional. Taxpayer's petition asserted that the School District's tax assessment appeal policy violates the Uniformity Clause of the Pennsylvania Constitution[1] because it targets only commercial properties. School District argues the trial court's order was interlocutory and unappealable, and, thus, Taxpayer's appeal to this Court should be quashed.

---

[1] "All taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws." PA. CONST. art. VIII, §1.

## Background

Taxpayer owns a 58.5-acre parcel of land located in Plymouth Township, Pennsylvania, which has been developed as a shopping mall. The mall's retailers include, *inter alia,* Best Buy, Giant Food Stores, Old Navy, and Bed Bath and Beyond. Taxpayer pays a real estate tax of approximately $1,158,784 *per annum*. Because of market conditions and competition from other malls, a number of stores have closed or left Taxpayer's mall. In July of 2013, the School District filed a so-called "reverse assessment" appeal, asserting that Taxpayer's property was under-assessed. The Montgomery County Board of Assessment Appeals (Board) conducted a hearing on the School District's appeal. Because the School District did not submit an expert valuation of Taxpayer's property, the Board issued a notice of no change to Taxpayer's assessment. On October 17, 2013, the School District appealed the Board's decision to the trial court. The School District did limited discovery but did not move the case to trial.

While the School District's appeal was pending, the Supreme Court decided *Valley Forge Towers Apartments N, LP v. Upper Merion Area School District*, 163 A.3d 962 (Pa. 2017). There, the Supreme Court held that

> a taxing authority is not permitted to implement a program of only appealing the assessments of one sub-classification of properties, where the sub-classification is drawn according to property type – that is, its use as a commercial, apartment complex, single-family residential, industrial, or the like.

*Id.* at 978.

On December 21, 2018, Taxpayer filed a petition to dismiss the School District's tax assessment appeal asserting that the appeal violated the Uniformity Clause because the School District had targeted only commercial real estate for

assessment appeals and virtually ignored residential properties. Petition, ¶28, at 5; Reproduced Record at 24a (R.R. __).[2] Further, the School District had not adopted a formal written policy setting forth its criteria for challenging existing tax assessments.

On April 2, 2019, the trial court conducted a hearing on Taxpayer's petition to dismiss the School District's appeal of Taxpayer's assessment of $43,690,940, which equated to a fair market value of $68,913,154. The School District argued that the actual market value of the mall was much higher. In support, the School District argued that in 2013, Taxpayer obtained a mortgage of $87 million on the property. Notes of Testimony, 4/2/2019, at 8 (N.T. __); R.R. 238a. In connection with that mortgage loan, the lender appraised the mall as having a fair market value of $120 million. In 2015, the School District's consultant appraised the mall as having a fair market value of $123 million.

In support of its constitutional challenge to the School District's appeal, Taxpayer presented both documentary evidence and the testimony of David Szablowski, the School District's Business Administrator. Szablowski testified that he was responsible for the School District's finances and, *inter alia*, served as the "point person" for tax assessment appeals. N.T. 11; R.R. 241a. Szablowski testified that he receives monthly real estate transfer tax reports from Montgomery County, which he reviews for undervalued properties. He then presents his findings to the School District's Superintendent, Solicitor and the School Board's Finance Committee.

Szablowski testified that in September 2018, the School Board adopted a formal policy for real estate tax assessment appeals. Under this written policy, the

---

[2] Taxpayer also sought a stay of discovery pending disposition of the petition.

Business Administrator reviews recent real estate transactions. If a property's sale price indicates an under-assessment of more than $500,000, then the Business Administrator and the Solicitor "research the transaction." Taxpayer's Hearing Exhibit No. 1; R.R. 275a. The School Board makes the ultimate decision on whether to file an assessment appeal.

Szablowski conceded that all of the School District's pending tax assessment appeals for residential properties had been filed before 2013. By contrast, from 2012 to 2018, the School District filed 40 commercial property appeals. For the 10 pending residential tax assessment appeals, the School District had not obtained appraisals, so those appeals were dismissed by the Board. The School District's residential assessment appeals pending with the trial court are "stagnant," according to Taxpayer. Taxpayer Brief at 8.

On cross-examination, Szablowski conceded that he was unaware of any residential tax assessment appeals filed after 2013. He also testified that the School District decided to appeal Taxpayer's assessment because it "felt that the retail property ... was severely undervalued as far as the fair market value[.]" N.T. 19; R.R. 249a. Szablowski denied that there was "any policy, written or unwritten," that the School District "would only file assessment appeals against only commercial properties." N.T. 20; R.R. 250a.

**Trial Court Decision**

The trial court denied Taxpayer's petition to dismiss the School District's assessment appeal, holding that the School District's assessment appeal policy did not violate the Uniformity Clause. The trial court concluded that Taxpayer did not prove that the School District's policy targeted only commercial property. Rather, the evidence showed that the School District had filed assessment

4

appeals "during the time period in question" for residential properties. Trial Court's 1925(a) Op. at 7. The trial court credited Szablowski's testimony that "valid reasons, such as more than $500,000 undervaluing of the property, rather than whether the property was residential or commercial, would prompt an appeal." *Id.* With regard to Taxpayer's property, the trial court stated:

> [A] mortgage of $87,500,000 was taken on the [Property] in 2013 and at that time the lender appraised the property at $120,000,000.[] A 2015 appraisal obtained by [the School District] showed the value of the [Property] to be $123,000,000. These appraisals appear to challenge the current market value of $68,913,154 placed on the property by the Board of Assessment [A]ppeal[s], and provide a valid and proper basis for [the School District] to exercise its statutory right to appeal an assessment.

*Id.* (footnote omitted).

## Appeal

On April 2, 2019, Taxpayer appealed the trial court's denial of its petition to dismiss. On appeal,[3] Taxpayer raises one issue. It contends that the trial court erred in holding that the School District's tax assessment appeal did not violate the Uniformity Clause.

> Subsequently, on May 20, 2019, this Court issued the following order:

> NOW, May 20, 2019, upon review of this matter, it appears that [Taxpayer] seeks review of the April 2, 2019 order of the Court of Common Pleas of Montgomery County that denied its petition to dismiss tax appeal and stay discovery. It further appears that the April 2, 2019 order is interlocutory and not immediately appealable as

---

[3] This Court's review of a tax assessment appeal determines whether the trial court abused its discretion, committed an error of law, or made findings of fact not supported by substantial evidence of record. *Maula v. Northampton County Division of Assessment*, 149 A.3d 442, 444 n.2 (Pa. Cmwlth. 2016) (*en banc*).

of right. Accordingly, the parties shall address the appealability of the April 2, 2019 order in their principal briefs on the merits. *See* Pa. R.A.P. 311, 313, 341.

Before addressing the merits of the trial court's decision to deny Taxpayer's petition to dismiss the School District's assessment appeal, we address the question raised in this Court's order of May 20, 2019.

### Pennsylvania Rules of Appellate Procedure

Rule 341(a) of the Pennsylvania Rules of Appellate Procedure states that "an appeal may be taken as of right from any final order of a government unit or trial court." PA. R.A.P. 341(a). A final order is one that "disposes of all claims and all parties" or "is certified as a final order" by a trial court "pursuant to [Rule] 341(c)."[4] PA. R.A.P. 341(b). "The purpose of limiting appellate review to final orders is 'to prevent piecemeal determinations and the consequent protraction of litigation.'" *In re First Baptist Church of Spring Mill*, 22 A.3d 1091, 1095 (Pa. Cmwlth. 2011) (quoting *Hionis v. Concord Township*, 973 A.2d 1030, 1034 (Pa. Cmwlth. 2009)).

On the other hand, the Rules of Appellate Procedure authorize an appeal as of right from certain categories of interlocutory orders, such as the grant

---

[4] It states, in pertinent part, as follows:

> (c) Determination of finality.--When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim or when multiple parties are involved, the trial court or other government unit may enter a final order as to one or more but fewer than all of the claims and parties only upon an express determination that an immediate appeal would facilitate resolution of the entire case. Such an order becomes appealable when entered. In the absence of such a determination and entry of a final order, any order or other form of decision that adjudicates fewer than all the claims and parties shall not constitute a final order.

PA. R.A.P. 341(c).

of a preliminary injunction.  PA. R.A.P. 311(a).[5]  In addition, the Rules authorize the appeal of an interlocutory order by permission pursuant to Chapter 13 of the Pennsylvania Rules of Appellate Procedure.  PA. R.A.P. 312.

---

[5] This rule states, in pertinent part, as follows:

(a)    General rule.--An appeal may be taken as of right and without reference to Pa.R.A.P. 341(c) from:

(1)    *Affecting judgments*.--An order refusing to open, vacate, or strike off a judgment….

(2)    *Attachments, etc*.--An order confirming, modifying, dissolving, or refusing to confirm, modify or dissolve an attachment, custodianship, receivership, or similar matter affecting the possession or control of property, except for orders pursuant to 23 Pa.C.S. §§ 3323(f), 3505(a).

(3)    *Change of criminal venue or venire.*--An order changing venue or venire in a criminal proceeding.

(4)    *Injunctions.*--An order that grants or denies, modifies or refuses to modify, continues or refuses to continue, or dissolves or refuses to dissolve an injunction unless the order was entered:

(i)    Pursuant to 23 Pa.C.S. §§ 3323(f), 3505(a); or

(ii)   After a trial but before entry of the final order. Such order is immediately appealable, however, if the order enjoins conduct previously permitted or mandated or permits or mandates conduct not previously mandated or permitted, and is effective before entry of the final order.

(5)    *Peremptory judgment in mandamus*.--An order granting peremptory judgment in mandamus.

(6)    *New trials*.--An order in a civil action or proceeding awarding a new trial, or an order in a criminal proceeding awarding a new trial where the defendant claims that the proper disposition of the matter would be an absolute discharge or where the Commonwealth claims that the trial court committed an error of law.

(7)    *Partition.*--An order directing partition.

(8)    *Other cases.*--An order that is made final or appealable by statute or general rule, even though the order does not dispose of all claims and of all parties.

PA. R.A.P. 311(a).

Rule 312 states that "[a]n appeal from an interlocutory order may be taken by permission pursuant to Chapter 13 (interlocutory appeals by permission)." PA. R.A.P. 312. Chapter 13 establishes the procedure for perfecting interlocutory appeals by permission. Specifically, it requires the interlocutory order to contain the statement "prescribed by 42 Pa. C.S. §702(b)." PA. R.A.P. 1311(b). The order must contain the statement that the "order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the matter." 42 Pa. C.S. §702(b). If the interlocutory order is amended to add this statement, then a petition for permission to appeal must be filed with the prothonotary of the appellate court within 30 days after entry of the order. PA. R.A.P. 1311(b).

Finally, the Pennsylvania Rules of Appellate Procedure authorize "*an appeal as of right from a collateral order* of an administrative agency or lower court." PA. R.A.P. 313(a) (emphasis added). A collateral order is: (1) separable from and collateral to the main cause of action, (2) involves a right too important to be denied review, and (3) presents a claim that will be lost if review is postponed until final judgment in the case. PA. R.A.P. 313(b). The collateral order rule is to be applied narrowly, inasmuch as it is an exception to the rule of finality. *Gerold v. Vehling*, 89 A.3d 767, 770 (Pa. Cmwlth. 2014).

Under the first prong, "an order is separable from the main cause of action if 'it can be resolved without analysis of the merits of the underlying dispute' and if it is 'entirely distinct from the underlying issue in the case.'" *Shearer v. Hafer*, 177 A.3d 850, 858 (Pa. 2018) (quoting *Commonwealth v. Blystone*, 119 A.3d 306, 312 (Pa. 2015)). If the order does not affect the merits of the underlying claim, it is

8

separable. The denial of a motion to impose a sanction is separable from, and collateral to, an underlying civil rights action. *See Quarles v. Knapp* (Pa. Cmwlth., No. 970 C.D. 2016, filed March 22, 2017) (unreported).[6]

Under the second prong, the right at stake must be a "significant [one] relative to the efficiency interests sought to be advanced by the final judgment rule." *Geniviva v. Frisk*, 725 A.2d 1209, 1213 (Pa. 1999). The order must "involve rights deeply rooted in public policy going beyond the particular litigation at hand." *Id.* at 1214. We have held an infringement upon a due process right may be too important to defer until a final order is issued. *Commonwealth ex rel. Kane v. Philip Morris, Inc.*, 128 A.3d 334, 344 (Pa. Cmwlth. 2015).

Under the third prong, the "matter must effectively be unreviewable on appeal from final judgment." *Commonwealth v. Wells*, 719 A.2d 729, 730 (Pa. 1998). "Essentially, the question is whether an erroneous trial court ruling 'cannot be undone.'" *McKeesport Housing Authority v. Nicholson* (Pa. Cmwlth., No. 1730 C.D. 2018, filed January 30, 2020) (unreported) (quoting *Ben v. Schwartz*, 729 A.2d 547, 552 (Pa. 1999)). For example, an interlocutory order granting an attorney's request to withdraw from representation meets the third prong because if the client "retains new counsel and a final judgment is ultimately reached," his claim about the attorney's withdrawal will be moot. *Gerold,* 89 A.3d at 771. Likewise, "the substantial cost a party would incur in defending a claim may equate to an irreparable loss of a right to avoid the burden entirely." *Philip Morris*, 128 A.3d at 345 (quoting *Geniviva*, 725 A.2d at 1213).

---

[6] An unreported panel decision of this Court, "issued after January 15, 2008," may be cited "for its persuasive value[.]" Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code §69.414(a).

With these principles in mind, we turn to the question of whether this Court can entertain the appeal of the trial court's order that denied Taxpayer's petition to dismiss the School District's reverse assessment appeal.

## Appealability of Trial Court Order

The trial court has not yet rendered a decision on the merits of the School District's tax assessment appeal, which may, or may not, revise the present assessment value of Taxpayer's property. Because the trial court's denial of Taxpayer's petition to dismiss did not put the parties "out of court," the order is not final but interlocutory. Neither party contends that the trial court's order falls into the category of interlocutory orders that are appealable as of right under Rule 311, and Taxpayer did not request permission to appeal pursuant to Rules 312 or 341. PA. R.A.P. 312, 341. The only question is whether the trial court's order is appealable as of right as a collateral order.

> A collateral order is an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost.

PA. R.A.P. 313(b). Each element in Rule 313(b) must be satisfied before the order in question can be considered collateral. *Gerold*, 89 A.3d at 770.

The trial court's order meets the first prong of the collateral order rule because it relates to Taxpayer's constitutional issue, which is separable from the merits of the School District's appeal challenging Taxpayer's real estate valuation as too low. The order meets the second prong because it involves an important question, *i.e.*, the Uniformity Clause, which prohibits "the government, including taxing authorities, [from] treat[ing] different property sub-classifications in a

10

disparate manner." *Valley Forge Towers,* 163 A.3d at 975. This leaves the third prong, *i.e.,* whether the interlocutory appeal is necessary lest Taxpayer irreparably lose its right to pursue its constitutional claim. Taxpayer contends that, while it could have initiated its own lawsuit against the School District, it would "incur substantial and unnecessary costs in bringing such an action and defending the preliminary objections which would undoubtedly be filed by the School District." Taxpayer Brief at 18. Taxpayer contends that this case is similar to *Philip Morris*, 128 A.3d at 354, where it was held that the "substantial cost" of the "defense will effectively equate to an irreparable loss of a right to avoid the burden entirely."

In *Philip Morris*, the Commonwealth appealed the trial court's denial of its motion to compel single-state arbitration and grant of the tobacco manufacturers' motion to compel multistate arbitration. The tobacco manufacturers contended that the Commonwealth's appeal should be quashed because the order was interlocutory and not immediately appealable. The Commonwealth conceded that it would have an opportunity after multistate arbitration to reargue its single-state position, but it would have to spend "hundreds of hours and millions of dollars" to arbitrate before its claim for single-state arbitration could be decided years later. *Id.* at 342.

This Court explained that, "[o]rdinarily, the temporary, but ultimately redressable, deprivation of a right does not constitute an irreparable loss." *Id.* at 346. However, without appellate review, the Commonwealth would be forced to pursue complex and expensive arbitration through to its completion. *Id.* Moreover, should the Commonwealth ultimately prevail on this issue in a later appeal, "the victory will be hollow as it will have already arbitrated its diligence in a multistate proceeding."

11

*Id.* at 347. This Court concluded that the trial court's interlocutory order satisfied the third prong of the collateral order rule in PA. R.A.P. 313(b).

Here, if this Court declines immediate review, Taxpayer will be forced to proceed with the School District's assessment appeal. It appealed in 2013, but the appeal automatically includes all subsequent tax years, *i.e.*, the years 2014 to 2019. *In re P-ville Associates*, 87 A.3d 898, 901 (Pa. Cmwlth. 2014) ("[S]o long as an assessment 'appeal is pending' before the board or trial court, subsequent assessments are automatically appealed."). This means that Taxpayer will have to engage in litigation that covers multiple tax assessment years before reaching its constitutional claim. Because Taxpayer will incur substantial cost if review of its constitutional claim is postponed, we conclude that the trial court's order has satisfied the third prong of the definition of a collateral order.

Accordingly, this Court concludes that it has jurisdiction over the trial court's order, which is a collateral order under PA. R.A.P. 313.

**Merits of Taxpayer's Appeal of Trial Court's Order**

Regarding the merits, Taxpayer argues that, "the School District operated systematically in multiple ways that resulted in [an] unequal, arbitrary, and discriminatory selection process." Taxpayer Brief at 25.

First, Taxpayer claims that the School District did not adopt a "reverse assessment" appeal policy until September 2018, more than five years after the School District appealed Taxpayer's assessment. In *Punxsutawney Area School District v. Broadwing Timber, LLC* (Pa. Cmwlth., No. 1209 C.D. 2018, filed October 29, 2019) (unreported), this Court held that a written policy is not required. We stated:

> We do not read *Valley Forge* as requiring a formal or written policy or criteria. All *Valley Forge* requires is that the "other

12

selection criteria" used by the taxing authority, whether a monetary threshold or other methodology, be "implemented without regard to the type of property in question or the residency status of its owner." 163 A.3d at 979. Thus, the lack of such formal or written policy does not warrant reversal.

*Id.*, slip op. at 18. However, here the School District conceded that its 2018 policy did not codify a prior, unwritten policy. Stated otherwise, it did not have a formal policy until 2018.

Second, Taxpayer contends that the School District's policy of appealing only properties under-assessed by $500,000 or more effectively eliminated all residential properties. Taxpayer Brief at 25. The School District responds that Taxpayer's mall is significantly under-assessed, and in determining whether to file a tax assessment appeal, it applies a cost benefit analysis without regard to the type or use of the property. School District Brief at 15.

In *In re Springfield School District*, 101 A.3d 835 (Pa. Cmwlth. 2014), the taxpayer challenged the school district's policy of selecting properties for assessment appeals whose sale prices were at least $500,000 higher than the implied market values. A $500,000 upward revision to an assessment would produce an additional $9,000 to $11,000 in annual tax revenue, which warranted the cost of the assessment appeal, in the view of the school district. The taxpayer claimed the $500,000 threshold was "arbitrary, capricious and discriminatory" because it excluded almost all residential properties from assessment appeals. *Id.* at 847.

This Court held that the school district's $500,000 threshold was based on reasonable economic considerations that balanced the costs of filing assessment appeals with the enhanced revenue to be realized. Its method was not "arbitrary, capricious, or discriminatory," and "[t]he fact that the $500,000 threshold would mostly subject commercial properties to assessment appeals d[id] not warrant a

13

different conclusion." *Id.* at 849. In reaching its conclusion, this Court explained that "[t]he Uniformity Clause 'does not require equalization across all potential sub-classifications of real property (for example, residential versus commercial).'" *Id.* (quoting *Downingtown Area School District v. Chester County Board of Assessment Appeals*, 913 A.2d 194, 201 n.9 (Pa. 2006)).

Subsequently, in *Valley Forge Towers*, taxpayers, who owned commercial property, challenged the school district's policy of appealing their tax assessments while ignoring under-assessed, single-family homes within the school district. The taxpayers sought to enjoin the policy as violative of the Uniformity Clause. The trial court dismissed the complaint as not stating a claim, and this Court affirmed. The Supreme Court reversed, holding that the complaint stated a valid claim under the Uniformity Clause because:

> [A] taxing authority is not permitted to implement a program of only appealing the assessments of one sub-classification of properties, where that sub-classification is drawn according to property type – that is, its use as commercial, apartment complex, single-family residential, industrial, or the like.

*Valley Forge Towers,* 163 A.3d at 978. The Supreme Court further explained that, "systematic disparate enforcement of the tax laws based on property sub-classification, even absent wrongful conduct, is constitutionally prohibited." *Id.* The Supreme Court cautioned, however, that its holding should not be construed as disallowing a neutral selection criterion, such as "the one challenged in *Springfield*," so long as it "[was] implemented without regard to the type of property in question or the residency status of its owner." *Id.* at 979. With regard to *Springfield*, the Supreme Court noted:

14

> Our disapproval of *Springfield's* interpretation of this Court's precedent should not be equated to disagreement with the result reached. In *Springfield*, the property owners challenged a school district's policy of using [] a monetary threshold to decide which properties to appeal…. They did not allege a scheme involving disparate treatment of property sub-classifications drawn according to property type or the status of its owner as a resident or non-resident of the taxing district.

*Valley Forge Towers*, 163 A.3d at 975 n.13.

Most recently, in *Kennett Consolidated School District v. Chester County Board of Assessment Appeals*, __ A.3d __ (Pa. Cmwlth., No. 253 C.D. 2019, filed February 28, 2020), this Court considered a taxpayer's challenge to a trial court's denial of its motion to quash the school district's assessment appeal of its property. The taxpayer argued that the school district violated the Uniformity Clause by: (1) appealing the assessments of only commercial properties, and (2) setting a monetary threshold targeting properties under-assessed by $1 million.

This Court affirmed the trial court, concluding that the school district's appeal policy did not violate the Uniformity Clause. The record showed that in deciding which property assessment to appeal, the school district intentionally disregarded the type of property. The school district reviewed all classes of properties including commercial and residential. Additionally, the school district's monetary threshold was based upon prudent fiscal grounds.

Here, the trial court held that Taxpayer did not prove that the School District's policy violated the Uniformity Clause because: (1) the School District "had taken numerous residential appeals during the time period in question"; (2) the School District showed that the deciding factor in whether to take an appeal was "economic reasons," such as a property being undervalued by "more than $500,000"; and (3) in 2013, Taxpayer took a mortgage of $87,500,000 on the

15

Property based on an appraised value of $120,000,000, which was almost double the market value placed on the property by the Board. Trial Court Op., 6/28/2019, at 7.

The ten residential property tax assessment appeals identified by the School District were all filed before 2012, and all concerned residences in exclusive neighborhoods in the School District. The School District did not present evidence showing that any residential tax assessment appeals were filed in or after 2013. The fact that the 10 residential assessment appeals were pending at the time the School District appealed Taxpayer's assessment does not support the trial court's finding that the School District "had taken numerous residential appeals during the time period in question." *Id.* The trial court's finding in this regard must be set aside as not supported by substantial evidence.

The School District's stated basis for filing the assessment appeal was a recorded mortgage that, on its face, indicated that Taxpayer's mall had a higher fair market value than shown in the assessment. However, Szablowski testified that he did not know whether the Property had been refinanced at the time the School District filed the tax assessment appeal. Further, the School District's real estate consultant at that time, Keystone Realty Advisors, did not offer any expert testimony on the refinancing of the mall.

The trial court found that the 2013 mortgage on the mall exceeded its fair market value, relying upon a statement of counsel for the School District. Trial Court's 1925(a) Op. at 2. *See also* N.T. 8; R.R. 238a ("[t]he mortgage that was filed … was $87 million[,]" which exceeded the fair market value of the property). This Court has stated that, "[g]enerally, an attorney's statement in an argument does not constitute evidence." *School District of Philadelphia v. Board of Revision of Taxes*, 217 A.3d 472, 485 (Pa. Cmwlth. 2019) (citing *East Norriton Township v. Gill*

16

*Quarries, Inc.*, 604 A.2d 763, 766 n.9 (Pa. Cmwlth. 1992) ("[S]elf-serving, unsubstantiated and unsworn statements by counsel are not competent evidence.")). Additionally, as Taxpayer points out, its mall had not been recently purchased and there were no changes in tenancy or improvements to the buildings. The record does not support the trial court's finding that the 2013 mortgage exceeded the fair market value of Taxpayer's property.

### Conclusion

The trial court erred. In concluding that the School District's decision to appeal the valuation of Taxpayer's mall conformed to the Uniformity Clause of the Pennsylvania Constitution, the trial court relied on factual findings not supported by substantial evidence. Accordingly, we vacate the trial court's order and remand this matter for further proceedings on Taxpayer's motion to dismiss the School District's reverse tax appeal. In doing so, the trial court will disregard statements of the School District's attorney; correct its finding that the School District had "taken numerous residential appeals during the time period in question," Trial Court Op., 6/28/2019, at 7; and limit its findings to what can be supported by substantial evidence of record.

_____
MARY HANNAH LEAVITT, President Judge

17

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Colonial School District | : | |
| | : | |
| v. | : | No. 530 C.D. 2019 |
| | : | |
| Montgomery County Board of | : | |
| Assessment Appeals, Metroplex West | : | |
| Associates, L.P., Plymouth Township | : | |
| and Montgomery County | : | |
| | : | |
| Appeal of: Metroplex West Associates, | : | |
| L.P. | : | |

## **O R D E R**

AND NOW, this 28th day of May, 2020, the order of the Court of Common Pleas of Montgomery County dated April 2, 2019, in the above-captioned matter is VACATED, and the matter is REMANDED for proceedings consistent with the attached opinion.

Jurisdiction relinquished.

_____
MARY HANNAH LEAVITT, President Judge