IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Westfall Hospitality Holding, LLC, :
                Appellant :
                 :
          v. : No. 1865 C.D. 2014
                 : Argued: December 10, 2015
Pike County Board of Assessment :
Appeals :

BEFORE: HONORABLE DAN PELLEGRINI, President Judge[1]
             HONORABLE MARY HANNAH LEAVITT, Judge[2]
             HONORABLE P. KEVIN BROBSON, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
PRESIDENT JUDGE PELLEGRINI          FILED: January 6, 2016

       Westfall Hospitality Holding, LLC (Westfall) appeals the order of the Pike County Court of Common Pleas (trial court) that determined the fair market value and the assessed value of its property for the years 2009, 2010, 2011, 2012, 2013 and 2014. At issue in this case is whether the trial court erred by accepting the Delaware Valley School District (School District) expert's opinion of value over that of Westfall's expert, largely based on its analysis of the comparable sales used by each expert. Discerning no error, we affirm.

---

    [1] This matter was assigned to this panel before January 1, 2016, when President Judge Pellegrini assumed the status of senior judge.

    [2] This case was assigned to the opinion writer before January 4, 2016, when Judge Leavitt became President Judge.

## I.

## A.

Westfall is a limited liability corporation registered in New York with a Pennsylvania office in Matamoras Borough (Borough), Pike County (County).[3] Westfall owns a 2.54-acre property in the Borough on which it constructed a 98-room, 59,901 square foot Hampton Inn Hotel in 2009. The property is accessible from both Interstate 84 and Route 6, and it shares a drive with the neighboring Best Western Hotel. The purchase of the land, the construction of the building and the installation of its facilities, including an indoor salt water pool, cost approximately $7,000,000.

In 2009, the County's Assessment Office (Assessment Office) determined the property's assessed value at $985,610 based on the predetermined 25% of the 1994 base year fair market value of $3,942,400. The Assessment Office converted the base year value to reflect an estimate for 2009 by dividing the assessed value by the decimal equivalent of the common level ratio (CLR) computed annually by the State Tax Equalization Board. Because the 2009 CLR was 17.1, the estimated 2009 market value was estimated to be $5,763,801 (the $985,610 assessed value divided by .171).

The County's Board of Assessment Appeals (Board) denied Westfall's appeal and Westfall appealed the Board's determination to the trial court. The School District intervened.

---

[3] Pike County is a Sixth Class County. 121 The Pennsylvania Manual 6-11 (2013).

**B.**

Before the trial court, Westfall presented the testimony and report of appraiser Joseph Fisher (Fisher). Fisher used the sales comparison approach to valuation[4] and selected three properties in northeast Pennsylvania as comparable

[4] As the Pennsylvania Supreme Court has explained:

> The General Assembly and this Court have set forth the foundational principles for the determination of the fair market value of property for tax assessment purposes. A property is to be assessed at its actual value. 53 Pa. C.S. §8842…. Actual value means a parcel's fair market value, which is "the price which a purchaser, willing but not obliged to buy, would pay an owner, willing but not obliged to sell, taking into consideration all uses to which the property is adapted and might in reason be applied." The "actual or fair market value, while not easily ascertained, is fixed by the opinions of competent witnesses as to what the property is worth on the market at a fair sale." In this regard, a parcel's market value is distinct from its value as it is currently being used; and while this Court has not definitively so held, the Commonwealth Court has reasoned that a property's use and its resulting value-in-use (value unique to a particular owner) is not to be considered in assessing the fair market value of property for tax assessment purposes. In assessing actual value, the legislature has required three approaches (1) cost reproduction, or replacement, as applicable, less depreciation and all forms of obsolescence; (2) comparable sales; and (3) income approach, and all three approaches to valuation must be considered in conjunction with one another.

*Harley-Davidson Motor Company v. Springettsbury Township*, 124 A.3d 270, 279 (Pa. 2015) (citations and footnotes omitted). *See also Aetna Life Insurance Co. v. Montgomery County Board of Assessment Appeals*, 111 A.3d 267, 278 (Pa. Cmwlth. 2015) ("The cost approach considers reproduction or replacement costs of the property, less depreciation and obsolescence. The income approach determines fair market value by dividing the subject property's annual net rental income by an investment rate of return. The comparable sales approach compares the subject property to similar properties with consideration given to size, age, physical condition, location and other factors. Significantly, '[t]he trial court has the discretion to decide which of the methods of valuation is the most appropriate and applicable to the given property.'') (citations omitted).

properties. The first comparable property was a Quality Inn and Suites in Mount Pocono Borough, Monroe County, which sold for $5,031,000, excluding furniture, fixtures and equipment (FF&E) in January 2008. Fisher made a 10% adjustment to take out the FF&E; a 20% adjustment because it is located in Mount Pocono, a popular tourist area; a 10% adjustment due to superior access compared to access to Westfall's property; a 10% adjustment based on the superior rooms; and deducted 5% due to 16 fewer guest rooms than the subject property. Fisher's total adjustment to this comparable was $35,000, his appraised value was $4,190,000, with a per room value of $42,805.

Fisher's second comparable property was another Hampton Inn in Sugarloaf Township, Luzerne County, at the intersections of Interstate 81 and Route 93, which sold for $6,100,000 in April 2006. He made a 10% adjustment due to its inferior location; a 10% adjustment for 25 more rooms; a 10% adjustment for superior rooms; a 5% adjustment for superior access; a 5% adjustment for land-to-building ratio; and an adjustment for FF&E. Fisher's appraised value for the second comparable was $4,370,000, with a per room value of $44,635.

Fisher's third comparable was a Fairfield Inn and Suites in Sugarloaf Township, Luzerne County, which sold for $4,370,000 in April 2006. Fisher made upward adjustments of 10% each due to an inferior location and a larger gross building area, but he made downward adjustments for superior access, superior accommodations and FF&E. He valued the property at $3,850,000 after the adjustments with a per room value of $39,333. Based on the foregoing comparables and based upon the sales comparison approach, Fisher valued the instant property at

$3,920,000, with a per room value of $40,000 which is $65.44 per square foot of gross building area.

Fisher also used the income capitalization approach to valuation. He used the actual occupancy/vacancy rate for the property for November 2009, 46%/54%, and an 80% vacancy rate for the meeting rooms. He also used the expenses from the property's books for the year after opening and determined that the property had a net operating income of $540,157. He ultimately arrived at a valuation of $4,100,000 for the property or $41,837 per guest room, and $68.45 per square foot of gross building area after the FF&E was deducted from his calculations. However, he explained that "[t]his approach is given secondary weight in this analysis and provides support for the value indicated by the sales comparison approach." (Reproduced Record (RR) at 429a).[5]

The School District presented the testimony and report of appraiser Robert Henkelman (Henkelman). Henkelman used nine comparable properties in determining his valuation under the sales comparison approach. Henkelman's first comparable is a 120-room Hampton Inn in Wilkes-Barre, Luzerne County, that sold

---

[5] Fisher also used the cost approach to valuation which he indicated is most relevant when a property is new or nearly new and has minimal accrued depreciation. He used the Marshall & Swift Valuation Service, a "nationally recognized" source in appraisal practice to try to calculate the reproduction or replacement cost of any given building. (RR at 35a). He stated that the average and median selling prices for commercial properties in Pike County for the period January 2005 to October 2008 was $184.65 and $135.64, respectively, and that the average and median size of the buildings were 3,972 and 3,215 feet, respectively. (*Id.* at 429a). He opined that the sales comparison and income approaches support his final valuation of $4,000,000 or $66.78 per square foot of gross building area or $40,816 per guest room. (*Id.*).

in May 2008, the same month as the instant property, for $6,600,000 without FF&E. This comparable was 20 years old at the time of sale, and while it is near Interstate 81, it is not visible and it is "on a very difficult site," "four miles away off Route 115 tucked behind an office building" and is subject to a number of easements. He calculated an adjusted unit rate of price of $66,000 per room.

Henkelman's second comparable is a 78-room Hampton Inn in Franklin Township, Carbon County, that sold in February 2006 for $5,124,000 without FF&E. (RR at 303a). He stated that "[t]his is an excellent, excellent comparable because it was sold in almost new condition," but that it is "more cramped" so "[a] minimal net positive adjustment of 5% is indicated." (*Id.* at 145a, 326a). He stated that while it is near the Pennsylvania Turnpike, it is not visible and it is not at an interstate interchange. He calculated an adjusted rate of $68,976 per guest room.

Henkelman's third comparable is a 103-room Best Western in Clarks Summit, Lackawanna County, that sold in October 2008 for $8,035,000. He stated that this comparable was the only full service hotel and that he had extensive knowledge about it because he has previously appraised portions of the property. He stated that "[t]here is a substantial negative adjustment for this FULL service hotel compared to the subject LIMITED service facility" and a negative adjustment for its location, but a positive adjustment for its $2,000,000 renovation at the time of sale. (RR at 326a). He calculated an adjusted rate of $68,413 per guest room.

Henkelman's fourth comparable is a 70-room Country Inn & Suites in South Middleton Township, Cumberland County, that sold in July 2009 for

$5,400,000 without FF&E. He stated that this comparable is in a better location because "[i]t has high visibility from I-81," it is a "pretty nice sale" because it was constructed in 2008, it sold within a year of construction, and it has 70 rooms. (RR at 149a, 326a). He calculated an adjusted unit rate of $69,429 per room.

Henkelman's fifth comparable is an 88-room Hilton Garden Inn in Strabane Township, Adams County, that sold in August 2009 for $6,550,000 without FF&E. He stated that "[t]his is a fine similar hotel that is 5 years young," and "[t]he location of the hotel is superior; however the age of the hotel is inferior." (RR at 327a). He testified that it is an 88-room limited service hotel, which is "maybe just one little level below the Hampton as far as quality," with an indoor pool. (*Id.* at 150a-151a). He calculated "[a] total of negative 10% indicates an adjusted rate of $66,989/room." (*Id.* at 327a).

Henkelman's sixth comparable is the same 82-room Quality Inn & Suites in Mount Pocono Borough used by Fisher as his first comparable. He stated that it was a former motel site and that some of the old motel rooms are still used. He stated that "[a]t the time of sale it was an average but decent hotel," but that it had lost its franchise and "[t]he site since the sale has greatly deteriorated." (RR at 327a). He stated that "the locations are overall similar," but that "[t]he main adjustment is for the age of the building and its use of the old motel units" with [a] net 10% positive adjustment." (*Id.*). He calculated an adjusted unit rate of $67,489 per room.

Henkelman's seventh comparable is a 65-room Best Western Plus hotel in Fairview Township, York County, that sold in March 2008 for $3,575,000 without

7

FF&E. (RR at 316a). He stated that it "is a more modest hotel but only 2 years old at the time of sale" and that "[i]t has a similar location along I-83." (*Id.* at 327a). He stated that "both the interior and exterior are more modest compared to the subject and the site is cramped." (*Id.*). He calculated that "overall, a positive 15% is indicated or an adjusted rate of $63,250/room." (*Id.*).

Henkelman's eighth comparable is a 78-room Country Inn & Suites hotel in East Lampeter Township, Lancaster County, that sold in October 2008 for $8,550,000 without FF&E. (RR at 318a). He stated that "[i]t has been recently renovated" and that it "has an overall appeal similar" to the instant property, but that "[t]he amenities are somewhat superior" and that "this is a significantly superior property mainly due to its location." (*Id.* at 327a). He concluded that "[a] net negative 35% is warranted and the adjusted rate is $71,250/room." (*Id.*).

Finally, Henkelman's ninth comparable is a 67-room Country Inn & Suites hotel in York Township, York County, that sold in March 2013 for $3,700,000 without FF&E. (RR at 321a). He stated that it "is a very similar type hotel property in a similar location along I-83" as the instant property. (*Id.* at 327a). He stated that "[i]t is an older hotel (13 years) that has been renovated," that "[i]ts location is similar," and that "[t]he amenities are similar." (*Id.*). However, he stated that "[t]he main difference is the new condition of the subject vs. the 13-year age of this hotel and the older rooms … that need renovation…." (*Id.*). He calculated "[a] net positive adjustment of 15% is indicated and the adjusted unit rate is now $63,507/room." (*Id.*).

8

Henkelman stated that he personally inspected all of the comparable buildings thoroughly, including the mechanical systems, pools, roofs and the guest rooms. (RR at 124a, 328a). He testified that all of the comparables, except for the third, are limited service hotels with an indoor pool, hot breakfast, kitchen and dining room. (*Id.* at 151a). After comparing all of the nine comparable properties to the instant property, and adjusting room rates based on age, location, quality and amenities, he determined that the fair market value of the instant property was $6,500,000 or $67,000 per room based on the market sales approach. (RR at 160a, 328a).[6]

Gene Porterfield (Porterfield), the County's Director of Assessment, testified regarding the method that he used to equalize the subject property with the neighboring Best Western hotel. (RR at 198a-202a). He stated that he looked at the cost approach and "learned by word of mouth" that construction of the subject property was $8,000,000, but he "looked at the current cost approach and felt that it was excessive and not an indication of value." (*Id.* at 198a). He stated that "[t]here was no income established for the property and actually we knew we couldn't do an income approach other than estimating what room rates might be and the typical costs and calculating an income approach to value," and that "[o]ur income approach came out at about 6 million." (*Id.* at 198a-199a). He testified that the only accurate method to establish value was through sales comparison and he used two comparable

---

[6] Henkelman also testified that the valuation of the instant property using the income approach was $6,300,000, but that this approach and the cost approach to valuation are only secondary indicators of value because "[t]here are too many variables that are unknown" because the property had only been open a month. (RR at 177a).

sales to set the value at approximately $5,800,000. He stated that he "then backed that into the base year value by using the [CLR] multiplying .171 times our number" to reach "our assessed value or our base-year value of $3,942,440.00 and applying the assessment predetermined ratio of twenty-five percent provided an assessed value of $985,610 to equalize the assessment." (*Id.*). He explained that "[t]he common level ratio difference between the two properties at that time equated to [an] approximately 1.1 million dollar difference which was between the common level ratio estimates of values." (*Id.* at 200a).

## C.

In rejecting Westfall's evidence of valuation, the trial court found that the properties used by Henkelman in his sales comparison "were more numerous and more appropriate" than those used by Fisher in determining valuation. (Trial Court 9/30/14 Order at 3).[7] Additionally, the trial court found:

> Mr. Fisher sought to exclude certain properties with higher values based upon reasoning that had little or no merit. First, the access to the property is certainly adequate. It has clear visibility and easy access from the two main highways in the County. Second, Pike County has many positive tourist attractions from sponsored events, the Delaware River, natural attractions including many national, state and local parks, waterfalls, and hiking trails, significant historical sights, and hunting and fishing places. The Hampton Inn is located at the eastern entry to Pike County very near to the New York and New Jersey borderlines. Third, even though the Hotel has limited services, certainly it is very close to other facilities that can provide those

[7] The parties do not dispute the trial court's finding that the comparable sales approach is the most appropriate to determine the valuation of the subject property.

10

services.    Finally,   the   property   in   question   is   newly constructed and comparison of it to only those which sold many years ago creates an inaccurately low value.

(Trial Court 9/30/14 Order at 4).

The trial court explained that Henkelman used nine separate properties to calculate the sales value of the property involving sales that were within four years of the 2009 valuation date with four located in northeastern Pennsylvania and five others located in southern and central Pennsylvania, including two Hampton Inns that were sold in 2006 and 2008.  (Trial Court 9/30/14 Order at 4).  The trial court noted "[t]hat based upon this comparison and his actual visit" to the instant property, Henkelman calculated the room value for all nine sales was $67,256 per room; the room value of the Hampton Inn sales was $67,488; and the average of the seven most comparable sales was $66,520; and that the value per room of the instant property was $67,000 for a total sales value of $6,500,000.  (*Id.* at 4-5).  The trial court also noted that Porterfield used two comparable sales to set the property's value at $5,763,800.  (*Id.* at 5).

As a result, the trial court concluded that Fisher's testimony was "factually flawed because that testimony was limited to comparison with lower valued properties and was further reduced in value by inapplicable comparisons between the properties," and that he "reduced value because of claims of inadequate access or lack of attractions for visitors or tourists."  (Trial Court 9/30/14 Order at 6).  The trial court also concluded that Henkelman's testimony was "more credible and

11

convincing and it is based upon a more thorough analysis of factors related to the valuation of the property according to the sales comparison approach." (*Id.*).

Accordingly, the trial court found: the instant property was valued as of September 1, 2009, at $6,500,000, with a common level ratio of 17.1 resulting in an assessed value for 2009 at $1,111,500; the fair market value shall remain at $6,500,000 for the years 2010, 2011, 2012, 2013 and 2014; that the CLR shall be adjusted to 20.4 for 2010; 21.4 for 2011; 24.7 for 2012; 25.8 for 2013; and 23.1 for 2014, resulting in an modified assessed valuation for each of those years. (Trial Court 9/30/14 Order at 7).[8]

## II.

In this appeal,[9] Westfall argues that the trial court abused its discretion and ignored substantial evidence by rejecting Fisher's appraisal in its entirety and by

---

[8] The trial court also explained that reference was made "to a claim alleged to be made by [Westfall] regarding a challenge to fair market value based upon a failure to properly equalize the property with the neighboring Best Western Hotel. However, no real challenge to this claim has been made so it is not being addressed herein." (Trial Court 9/30/14 Order at 6).

[9] This Court's review in tax assessment appeals is limited to determining whether the trial court committed an error of law or an abuse of discretion or whether constitutional rights were violated. *Aetna Life Insurance Co.*, 111 A.3d at 278 n.2 (citation omitted). As we have explained:

> An actual or market value must be determined based on competent, relevant evidence. In a tax assessment appeal, the trial court is the fact-finder and has the authority to weigh evidence and make credibility determinations. The trial court's function in a tax assessment is not to independently value the property but to weigh the conflicting testimony and arrive at a valuation based on the credibility of witnesses. The trial court's findings are entitled to great deference, and its decision will not be disturbed absent a clear error.

**(Footnote continued on next page…)**

12

adopting Henkelman's appraisal in its entirety. Specifically, Westfall claims that the trial court erred in:[10]

> • rejecting Fisher's three comparables on the basis that they were sold "many years ago" and created an "inaccurately low value" because they were all sold within approximately three years of the date of valuation;
>
> • rejecting Fisher's testimony and report on the basis that he "sought to exclude certain properties with higher values based upon reasoning that had little or no merit" or his reliance on lower valued properties;
>
> • rejecting Fisher's testimony and report on the basis that it was "factually flawed" because his appraisal is not based on inaccurate or untrue facts;
>
> • relying on Henkelman's comparables because five of the nine were located in south and central Pennsylvania in areas dissimilar from rural Pike County;
>
> • relying on Henkelman's third comparable because it is a full-service hotel because the instant property is a limited-service hotel; and
>
> • determining that the instant property has adequate access without addressing whether its lack of direct access through the parking lot of the adjacent Best Western would

**(continued…)**

*In re Appeal of Springfield School District*, 101 A.3d 835, 846 n.5 (Pa. Cmwlth. 2014) (citations omitted). The trial court's determinations of fair market and assessed values may not be disturbed on appeal where they are based on a credibility determination. *Id.* at 846-47.

[10] In the interest of clarity, we reorder the claims raised by Westfall in this appeal.

result in a lower value in relation to the other comparable properties.

At the outset, given that no two properties are exactly alike, it is necessary to make adjustments of the sale price of the purported comparables to arrive at the fair market value of the property being appraised. As our Supreme Court has explained:

> [A]s one of the factors to be considered in determining market value, 'comparables' means properties of a similar nature which have been recently sold. In order to be comparable in this latter sense, however, the properties need not be identical. In reviewing sales of other properties, 'to compare' means to examine the characters or qualities of one or more properties for the purpose of discovering their resemblances or differences. The aim is to show relative values by bringing out characteristic qualities, whether similar or divergent. Thus, comparisons based on sales may be made according to location, age and condition of improvements, income and expense, use, size, type of construction and in numerous other ways.

*McKnight Shopping Center v. Board of Property Assessment, Appeals and Review*, 209 A.2d 389, 393 (Pa. 1965) (citation omitted). The opinion of an expert in making those adjustments is subject to impeachment and rebuttal, and the factors the expert considered and how he or she choose and adjusted the sale price of the comparables to the property being valued goes to the weight and credibility of the expert's testimony.

The function of the trial court in determining weight and credibility of that testimony, including what that expert considers is a comparable sale, will not be

14

set aside unless the trial court abused its discretion. *In re Appeal of Springfield School District*, 101 A.3d at 846 n.5.[11]

> Nevertheless, as fact-finder, "the trial court must state the basis and reasons for its decision." If the trial court rejects an expert's testimony for specified reasons, an appellate court may review the validity of those reasons. Further, if an expert uses an improper factor when fixing the fair market value of real estate, his opinion is not substantial evidence that can support a finding of value.

*Aetna Life Insurance Co.*, 111 A.3d at 279 (citations omitted). In examining each of Westfall's claims, given the trial court's articulation of the basis and the reasons that it found for the School District, we find nothing even close to an abuse of discretion or an error of law.

**A.**

Westfall first claims that the trial court erred in rejecting Fisher's three comparables that were sold in April 2006 and January 2008 because they were temporally removed from the appraisal and created an inaccurately low value. However, as Henkelman explained, he "was really looking for hotels that sold hopefully within twelve to eighteen months from the effective date of my appraisal." (RR at 154a). As outlined above, Henkelman's comparables were sold in: May

---

[11] An abuse of discretion is defined as "not merely an error of judgment, but if in reaching a conclusion, the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence of record, discretion is abused." *Appeal of Lynch Community Homes, Inc.*, 522 A.2d 716, 719 n. 4 (Pa. Cmwlth. 1987).

2008; February 2006; October 2008; July 2009; August 2009; January 2008; March 2008; October 2008; and March 2013. The trial court specifically explained that only one of Henkelman's nine comparable properties was sold prior to 2008, comprising 11% of his sample, while two of Fisher's three comparable properties sold prior to 2008, comprising 66% of his sample, and that "[the] Court found that difference questionable at best, and considered it in its assessment of the relative credibility of each report." (Trial Court 1/26/15 Opinion at 17).

As this Court has explained, "[a] sale of comparable property, *if not too remote in time*, has probative value and is admissible in evidence to determine the fair market value of the subject property. The effect to be given temporal remoteness is within the discretion of the Board." *Pittsburgh Des Moines Steel Company v. Board of Property Assessment, Appeals and Review*, 519 A.2d 1080, 1081 (Pa. Cmwlth. 1986) (emphasis in original). As a result, it was within the trial court's discretion and the trial court did not err in accepting as more credible the evidence of valuation offered by Henkelman where the sales of seven of the nine comparable properties that he offered were more recent than the sale of all three of Fisher's comparable properties. *See id.* ("The trial court excluded the sales of 1979 and 1980 as being too remote, but allowed the sales for year 1982 as the most recent sales.").

**B.**

Westfall next claims that the trial court did not give an adequate explanation for rejecting Fisher's reasoning for excluding higher-valued comparables and including lower-valued comparables based on the subject property's purported inadequate access, its limited services, and the lack of attractions for visitors or

tourists. However, as outlined in Section II.F., *infra*, the trial court's finding that there is adequate access to the subject property is supported by substantial evidence and provides a basis for rejecting Fisher's finding to the contrary. Additionally, in his report, Fisher notes that "[t]he subject's location permits easy access to Interstate Route 84, US Route 6 and 209, along with New York Route 42 and 97. It is the point where Pennsylvania, New York, and New Jersey meet." (RR at 382a).

Regarding nearby services, Fisher's report also notes that "[j]ust to the west of the entrance/exit ramp to I-84 there is one of the largest shopping centers in the county" which "consists of a K-mart, and a variety of supporting retail facilities and fast food restaurants" with a Home Depot store .25 miles to the east. (RR at 382a). His report also notes that "[a]long US Route 6 and 209 is a variety of retail and service establishments providing ample shopping opportunities to residents and visitors alike." (*Id.*).

Moreover, Fisher's report notes that "[r]ecreational facilities beyond the neighborhood but within easy driving distance include but are not limited to State Game Lands #180, Delaware State Forest, Promised Land State Park and Lake Wallenpaupack, the largest man-made lake in the Commonwealth of Pennsylvania" and that "[t]he area directly north of the subject property is part of the 'Upper Delaware Scenic and Recreational River' Management program." (RR at 382a). He also notes that "[d]irectly to the south of the subject property is the lands of the Delaware Water Gap National Recreation area" which "encompasses a 40-mile stretch of the middle Delaware River and 69,269 adjoining acres of land owned and operated by the National Park Service." (*Id.* at 384a).

17

As a result, the trial court's explanation in Finding of Fact 20 for rejecting Fisher's reasoning as to why he excluded properties with higher values and relied on lower-valued properties as comparables to the instant property is adequate and supported by the record. (*See* Trial Court 1/26/15 Opinion at 17) ("This Court respectfully submits that the record therefore supports Finding of Fact 20, and that to the extent [Westfall]'s own expert's report included a reference to Pike County's recreational and service offerings, and Mr. Fisher reiterated it on cross-examination as recorded in the Transcript, without record of objection from [Westfall], it has waived its right to object on appeal.").

## C.

Westfall next claims that the trial court erred in rejecting Fisher's testimony and report on the basis that it was "factually flawed" because his appraisal is not based on inaccurate or untrue facts. However, as the trial court explained, it "found several imperfections or weaknesses which it considered to detract from the whole and hinder the effectiveness of Mr. Fisher's assessment," and that "the flaws this Court identified, when viewed in context of the evidence in the record at hand, were fatal to [Westfall] to the extent that, in this Court's opinion, Mr. Henkelman's assessment was superior." (Trial Court 1/26/15 Opinion at 19). Specifically, the trial court analyzed the differing valuations of Fisher and Henkelman for the common comparable property, the 82-room Quality Inn & Suites in Mount Pocono Borough, explaining:

> The $841,000 difference between the experts' valuations of the Quality Inn property is non-trivial, and this Court therefore afforded it great weight among the factors considered in making out determinations. Mr. Henkelman's

18

inclusion of explicitly stated [FF&E] deductions stood in stark contrast to the absence thereof in Mr. Fisher's report. The latter included no specific FF&E values and lacked even an explanation of how the FF&E adjustment contributed to the 35 percent overall negative adjustment Mr. Fisher applied to the Quality Inn. This distinction between the reports made Mr. Henkelman's more appropriate, in this Court's determination, than Mr. Fisher's.

(*Id.* at 12). The foregoing provides a specific basis upon which the trial court could find that Fisher's testimony and report were "factually flawed" and upon which generally attribute greater credibility to Henkelman's testimony and report.

**D.**

Westfall next claims that the trial court erred in relying on Henkelman's comparables because five of the nine were located in south and central Pennsylvania in areas dissimilar from rural Pike County. However, as Henkelman explained in his report, "[t]here is a general lack of mid-level limited service hotel property sales in the subject's area due to the limited number of hotel properties," and that "[t]here are more limited-service hotel sales available for comparison outside of the immediate area in similar type locations." (RR at 300a).[12]

---

[12] *See also* Henkelman's testimony at the trial court hearing (RR at 148a, 154a) ("Well, you know I've now gone out of the area a little bit. I've been looking for other locations that have similar – I wouldn't say similar, but other recreational pursuits, family hotels, people on the road near an interstate. [The fourth comparable] sold the month before I did my appraisal, so it is really concurrent with what's happening and it really helps show that there are buyers and sellers selling hotels at the time of the effective date of our Hampton Inn."); ("I was really looking for hotels that sold hopefully within twelve to eighteen months from the effective date of my appraisal. [The seventh comparable] sold in March of 2008, it is a more modest hotel, it's on a good location near the I-83 and turnpike.").

As outlined above, in finding comparable property sales, "one of the factors to be considered in determining market value, 'comparables' means properties of a similar nature which have been recently sold," *McKnight Shopping Center*, 209 A.2d at 393, and that temporal remoteness affects the probative value and admissibility of evidence of the fair market value of a property. *Pittsburgh Des Moines Steel Company*, 519 A.2d at 1081. In the absence of any record objection to Henkelman's report or his testimony regarding his fourth, fifth, seventh, eighth or ninth comparable, there is no reason to disturb the trial court's determination that "Mr. Henkelman's comparables were well-described and adjusted, and in sufficient proximity, both geographically and substantively, to the subject Property." (Trial Court 1/26/15 Opinion at 13). Moreover, this challenge to Henkelman's methodology in obtaining comparable properties goes to the weight of this evidence and not to its competence. *See, e.g., Parkview Court Associates v. Delaware County Board of Assessment Appeals*, 959 A.2d 515, 521 (Pa. Cmwlth. 2008) (holding that an argument challenging an expert's methodology "essentially seeks a new credibility finding … which is inappropriate on appeal.").

**E.**

Westfall next claims that the trial court erred in relying on Henkelman's third comparable because it is a full-service hotel because the instant property is a limited-service hotel. However, as the trial court explained, "the law does not proscribe the allowance of a full-service hotel as a comparable sale relative to a limited service hotel, and there is substantial evidence to support this Court's determination that Mr. Henkelman's unchallenged knowledge of the full-service hotel in question enabled him to make accurate adjustments to its valuation relative to the

subject Property." (Trial Court 1/26/15 Opinion at 14). Indeed, as Henkelman explained, he had extensive knowledge about that property because he has previously appraised portions of it and he specifically made "a substantial negative adjustment for this FULL service hotel compared to the subject LIMITED service facility." (RR at 146a, 326a) (emphasis in original).

Moreover, the trial court explained that, "[i]n any event, the absence of the full-service hotel would not alter this Court's ultimate determination of the subject Property's valuation." (Trial Court 1/26/15 Opinion at 13). As a result, any purported error in this regard is harmless and not a basis upon which to reverse the trial court's valuation. *See, e.g., Bellevue-Stratford Co. v. City of Philadelphia*, 77 A.2d 604, 606 (Pa. 1951) ("The error charged to the trial judge in receiving evidence of profit or a lack of it from the conduct of the hotel business on the premises, was harmless in any event. As stated by the court in banc: '[*The trial judge's*] *reasons for arriving at the value stated in his adjudication did not include any reference whatever to income or earning power*.' (Emphasis supplied.)").

**F.**

Finally, Westfall claims that the trial court erred in determining that the instant property has adequate access without addressing whether its lack of direct access through the parking lot of the adjacent Best Western Hotel would result in a lower value in relation to the other comparable properties. However, as Henkelman's report stated, "[t]he access is not direct, however, it is if guests travel through the adjacent Best Western Hotel parking lot;" that "[t]here is another less direct access to

21

Westfall Town Drive;" and that "once the hotel is seen from the interstate, patrons will find a way to the property." (RR at 278a). As he explained in his testimony:

> I'm not sure [that the access to the hotel adversely affects its value]. It would if this were maybe a retail location where you need people to come right off the street to go, but as a hotel, you made reservations where you are looking for a hotel, so once you come off the exit, you see it there, you know there's some way to get to it, I don't think that I would agree for a hotel that it's very important because you can get there a couple of different ways.

(*Id.* at 192a).

As a result, the trial court's findings that "the access to the Property is certainly adequate" and "[i]t has clear visibility and easy access from the two main highways in the County," (Trial Court 9/30/14 Order at 4), are amply supported by substantial evidence. Moreover, the trial court noted that it did not deny that there was no direct highway access or that the most direct access was through the neighboring hotel's parking lot, explaining that "[w]hether or not one characteristic or another affects the relative value of a comparable to the subject Property is not dispositive of its inclusion in a sales comparison analysis" and that is why both Fisher and Henkelman "included adjustments in their sales comparison analyses, meant to equalize the comparables with the subject Property." (Trial Court 1/26/15 Opinion at 15).

Accordingly, the trial court's order is affirmed.[13]

_____

DAN PELLEGRINI, President Judge

---

[13] To the extent that Westfall also raises an equalization claim in its appellate brief, as noted by the Board and the School District, this claim has been waived for purposes of appeal. Pa. R.A.P. 302(a), 1925(b)(4), 2116(a).

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Westfall Hospitality Holding, LLC, :
                    Appellant :
                                :
        v.                      : No. 1865 C.D. 2014
                                :
Pike County Board of Assessment :
Appeals                         :

# **O R D E R**

AND NOW, this 6<u>th</u> day of <u>January</u>, 2016, the order of the Pike County Court of Common Pleas dated September 30, 2014, at No. 499-CV-2010, is affirmed.

_____
DAN PELLEGRINI, President Judge