IN THE COMMONWEALTH COURT OF PENNSYLVANIA

GM Berkshire Hills LLC and      :
GM Oberlin Berkshire Hills LLC,      :
            Appellants      :
     :
     :
        v.      :
     :
     :
     :
Berks County Board of Assessment      :    No. 930 C.D. 2020
and Wilson School District      :    Argued: June 10, 2021

BEFORE:     HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE ANNE E. COVEY, Judge
               HONORABLE CHRISTINE FIZZANO CANNON, Judge

OPINION
BY JUDGE FIZZANO CANNON            FILED: July 8, 2021

       GM Berkshire Hills LLC and GM Oberlin Berkshire Hills LLC (together, Berkshire), the owners of two properties (Properties) in Berks County, appeal from the August 18, 2020, final order of the Court of Common Pleas of Berks County (trial court) regarding the Wilson School District's (District's) tax assessment appeal of the Properties.[1] Upon review, we affirm.

---

[1] The trial court had previously bifurcated the methodology and valuation questions in the case. The trial court's January 14, 2020, decision and order addressed the methodology questions and is the substantive basis of Berkshire's appeal to this Court. The trial court's August 18, 2020, final order indicated the parties had stipulated to resolve the valuation questions and expressly acknowledged Berkshire's intent to appeal on the methodology questions. *See* Appendix A & B to Berkshire's Brief (Br.).

## I. Factual & Procedural Background

The underlying facts of this appeal as stated by the trial court and reflected in the record are not in dispute.[2] The Properties are located in Spring Township at 2902 Wyoming Drive and 2800 Wilson School Lane, within the District's geographical boundaries. Trial Ct. Op. at 3 (Appendix A to Berkshire's Br.). The Properties are the sites of 47 residential buildings, including 408 rental units. *Id.* Berkshire is the current record owner, having purchased the Properties in November 2017 for a combined sales price of $54,250,000. *Id.* At that time, the County recorded an assessed value for the Properties at a combined total of $10,448,700, based on the last countywide assessment in 1994. *Id.* at 3 & 11.

In June 2018, the District's school board passed a resolution (Resolution) authorizing its business office to initiate and litigate appeals of property assessments within the District.[3] Trial Ct. Op. at 4. The Resolution directed the business office to use monthly reports generated by the State Tax Equalization Board (STEB) as a basis to select properties for appeal. *Id.* These reports list recent property sales in each county along with the sales prices and current assessed values. Reproduced Record (R.R.) at 10a-11a & 37a-54a. The Resolution instructed the business office to begin with recently sold properties within the District and their current assessments from the STEB reports, apply the County's applicable common level ratio[4] (CLR) of 68.5% to each recent sales price, compare the resulting figure

---

[2] The trial court stated in its decision that the parties stipulated to the Findings of Fact. Trial Ct. Op. at 2.

[3] Christine Schlosman (Schlosman), the District's chief financial officer, testified that these resolutions are enacted annually by the District. Reproduced Record (R.R.) at 9a.

[4] Section 102 of the General County Assessment Law, Act of May 22, 1933, P.L. 853, *as amended*, added by the Act of December 28, 1955, P.L. 917 (Assessment Law), defines the

to the property's current assessed value, and pursue an appeal if the difference between the two figures exceeded $150,000 for a given property. Trial Ct. Op. at 4; R.R. at 10a & 37a-38a. The $150,000 figure represents a cost-benefit threshold at which the revenue from a successful appeal would justify the cost of the legal and appraisal fees necessary for the District to undertake the appeal. R.R. at 33a. The Resolution does not instruct the business office to consider the type or nature of a property (commercial, residential, agricultural, or industrial, etc.) when determining whether the property may be underassessed and subject to an appeal. Trial Ct. Op. at 4; R.R. at 10a, 13a, 15a & 37a-38a. Appeals initiated by the District using this method during the relevant time period included properties classified as "industrial, farm, commercial, residential, and apartment complexes."[5] Trial Ct. Op. at 4.

Using the method outlined in the Resolution, the District calculated that the Properties' combined November 2017 sales price of $54,250,000, when multiplied by the applicable 68.5% CLR, resulted in a current combined assessment value of $37,161,300. R.R. at 4a. This exceeded the prior combined assessment value of $10,448,700 by far more than $150,000; in fact, the Properties were underassessed, according to this calculation, by over $26 million. *Id.* The District therefore appealed the Properties' assessments for the 2018 and 2019 tax years to

"common level ratio" (CLR) as "the ratio of assessed value to current market value used generally in the county as last determined by [the STEB] pursuant to the [A]ct of June 27, 1947 (P.L. 1046, No. 447), referred to as the State Tax Equalization Board Law." 72 P.S. § 5020-102. The CLR is calculated for each county on an annual basis by the STEB using data from all arms-length sales transactions during the relevant period, supplemented by independent appraisal data and other relevant information. *Clifton v. Allegheny Cnty.*, 969 A.2d 1197, 1215-16 (Pa. 2009). For example, "a county's CLR will be 70 if the total assessed value of properties sold in arms-length sales in a year is 70% of the total market value of the properties" in the county. *Id.* at 1216.

[5] Apartment complexes like the ones at issue here are residential in nature, but for assessment purposes they have been characterized as commercial. *See Valley Forge Towers Apartments N, LP v. Upper Merion Area Sch. Dist.*, 163 A.3d 962, 965 (Pa. 2017).

the County Board of Assessment (Board) in August 2018. Trial Ct. Op. at 4. The Board held a hearing in September 2018, then increased the assessed and taxable value of the Properties to a combined new total of $37,161,300 (68.5% of the November 2017 combined sales price of $54,250,000). *Id*. at 5. Berkshire appealed to the trial court, which conducted a hearing on October 24, 2019. *Id*.

Christine Schlosman (Schlosman) of the District's business office testified. She has been with the District since 2007, is currently its Chief Financial Officer, and oversees the business office. R.R. at 8a. Schlosman explained that based on the authority granted by the Resolution, the business office reviews the monthly STEB reports and appeals nearly all assessments of properties within the District where the calculations set forth in the Resolution are met. *Id*. at 13a.[6] The $150,000 figure used as the threshold for an appeal was derived by the business office in 2017 and reflects potential annual revenues to the District of about $3,900. *Id*. at 15a-16a.

Schlosman confirmed that the business office does not consider appeals of properties that do not appear on the monthly STEB reports. R.R. at 18a. The District does not routinely conduct fair market valuations of properties throughout its area, does not ask the Board to do so on its behalf, and does not authorize the business office to expend resources on such practices, because such efforts would require evaluation of properties that are not on the market or access to otherwise private financial records of property owners, such as profit and loss statements from commercial real estate entities. *Id*. at 22a-24a.

---

[6] Schlosman explained that an exception might arise where a vacant lot is sold and will shortly be developed. R.R. at 13a. Because that property will be reassessed by the County once the development is complete, the business office would refrain from expending time and resources to appeal the potential underassessment. *Id*. at 13a-14a.

4

John Miravich (Miravich) also testified before the trial court. He is retained by the District to serve as its solicitor and participates in assessment appeals on an hourly-billed basis. R.R. at 26a & 30a. He stated that the STEB reports are the starting point for such considerations and serve as a factual basis for the District to assert that a property is underassessed based on its recent sale, because the publicly recorded price, as listed on the reports, is a relatively accurate indicator of the property's actual market value. *Id*. at 27a & 31a-32a. Miravich stated that he does not believe he has the legal authority to ask the District to request that owners of unsold properties provide the District with information concerning their properties' values. *Id*. at 28a. He added that in Berks County, the assessment appeal procedure has no discovery process that would allow the District to obtain non-public financial or value information on properties within its area.

On January 14, 2020, the trial court issued its decision and order.[7] The trial court recognized that the District's actions are subject to constitutional parameters, including the Equal Protection Clause of the U.S. Constitution, U.S. Const. amend. XIV § 1, and the Uniformity Clause of the Pennsylvania Constitution, Pa. Const. art. VIII § 1. Trial Ct. Op. at 8. The trial court also recognized that the nature of the assessment appeal process, whether initiated by a taxpayer or a taxing authority, creates the potential for disparate taxation because only those properties selected for appeal will be reviewed and potentially reassessed, while others will remain under their prior assessment values, whether those values have since become underassessed or over-assessed due to changes in the local economy and real estate market. *Id*. at 10-11. The trial court noted that the County's CLR, which is devised annually by the STEB, aims to equalize assessment values over time, but it is only

---

[7] As indicated in note 1 above, the trial court had previously bifurcated the methodology aspects of the case from the valuation aspects; the valuation aspects are not at issue here.

5

implemented on the occasion of an appeal that necessarily singles out the property assessment that is being appealed. "As a result, two equivalent properties, side by side, within the same taxing district, can have two different assessments solely because one property's assessment was appealed and the other's was not." *Id*. at 11.

The trial court observed, however, that non-discriminatory methods of selecting properties to appeal are possible. Trial Ct. Op. at 12-13. The trial court found the District's method of selecting recently sold properties from the monthly STEB reports, using the CLR to calculate the differential between those properties' recent sales prices and the previous assessed value, and appealing assessments where the differential was at least $150,000, to be acceptable. *Id*. at 13-15. The trial court concluded that the District's method relied on publicly available information providing "a reasonable facsimile to fair market value," did not select properties based on their type or classification, and "did not deliberately choose to appeal one property and reject another" based on any unconstitutional premise. *Id*. at 13-15.

Berkshire thereafter appealed to this Court.

## II. Parties' Arguments

Berkshire argues that the District's method of using recently sold properties for determining which property assessments to appeal violates the U.S. Constitution's Equal Protection Clause and the Pennsylvania Constitution's Uniformity Clause. Berkshire's Br. at 9-12 & Reply Br. at 4-8. Berkshire asserts that as a taxing authority, the District may not selectively seek reassessment of properties based on their recent sales prices while declining to appeal the assessments of unsold properties that may be similarly underassessed. *Id*. at 10-12 & 16 & Reply Br. at 4-8. Berkshire relies on *Allegheny Pittsburgh Coal Company v. County Commission of Webster County*, 488 U.S. 336 (1989), for the premise that

6

federal equal protection principles extend to state and local real estate taxation systems and protect taxpayers from differential treatment based on recent property sales prices. Berkshire contends that under the District's selection method, new owners will be unfairly taxed in comparison to owners of similar properties remaining un-assessed because those properties were not recently sold. *Id*. at 10-12 & 16 & Reply Br. at 4. In this context, Berkshire avers that the District's reliance on recent purchase prices may be convenient and even accurate, but is nevertheless arbitrary and improper. *Id*. at 13 & Reply Br. at 10-11.

Berkshire also argues that the District's method violates the Pennsylvania Constitution's Uniformity Clause for similar reasons. Berkshire's Br. at 12. Berkshire points out that equal protection jurisprudence under the U.S. Constitution provides the "constitutional floor for Pennsylvania's uniformity system"; therefore, a violation of equal protection principles necessarily also violates the Uniformity Clause. *Id*. at 13 & Reply Br. at 2 (citing *Downingtown Area Sch. Dist. v. Chester Cnty. Bd. of Assessment Appeals*, 913 A.2d 194, 200 (Pa. 2006)).

Berkshire also challenges the District's use of a $150,000 threshold to determine which recently sold properties to appeal for reassessment. Berkshire's Br. at 18-25 & Reply Br. at 11-13. Berkshire acknowledges that this practice may be facially neutral and not dependent on classifications by property type, but suggests that it violates Pennsylvania's Uniformity Clause by resulting in disparate treatment of otherwise similarly situated properties and their owners, even if it may be a valid cost-benefit analysis by the District. *Id*. at 18-21 & Reply Br. at 11-13.

The District responds that Berkshire has failed to meet its heavy burden to establish that the District's method of determining which property assessments to appeal violates constitutional principles. District's Br. at 27. The District adds that

7

no relevant precedent prohibits a school district from using a property's recent sales price when selecting assessments to appeal, so long as the selection method does not differentiate based on property type or classification (residential, commercial, industrial, or agricultural, etc.). *Id*. at 23. The District defends the constitutionality of its selection method by pointing out that it uses publicly available information reflecting the current market value of properties within its boundaries (recent sales prices in the STEB reports) and criteria applicable to any property within its boundaries (the $150,000 threshold). *Id*. at 13-18. The District asserts that Berkshire's arguments, if successful, could restrict a taxing authority's statutory appeal rights to an extent that they would be effectively negated. *Id*. at 14.

### III. Discussion[8]

The Consolidated County Assessment Law, 53 Pa.C.S. §§ 8801-8868, grants a school district "the right to appeal any assessment within its jurisdiction in the same manner, subject to the same procedure and with like effect as if the appeal were taken by a taxable person with respect to the assessment." 53 Pa.C.S. § 8855. Section 8855 does not restrict the methodology employed by a school district to determine whether to appeal. *Bethlehem Area Sch. Dist. v. Bd. of Revenue Appeals of Northampton Cnty.*, 225 A.3d 212, 219 (Pa. Cmwlth. 2020). Nonetheless, in selecting properties for assessment appeals, the school district must exercise its discretion within constitutional boundaries. *Id*.

The Equal Protection Clause of the U.S. Constitution provides that no state or governmental entity may "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV § 1. The Pennsylvania

---

[8] This Court's review of a trial court decision in a property tax assessment appeal is limited to a determination of whether the trial court abused its discretion, committed an error of law, or made findings of fact not supported by substantial evidence. *Maula v. Northampton Cnty. Div. of Assessment*, 149 A.3d 442, 444 n.2 (Pa. Cmwlth. 2016).

Constitution's Uniformity Clause states: "All taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws." Pa. Const. art. VIII § 1. The general constitutional principles governing the validity of tax classifications are well established, and we evaluate challenges based on the equal protection and uniformity standards in the same manner:

> Under the [E]qual [P]rotection [C]lause, and under the Uniformity Clause, absolute equality and perfect uniformity in taxation are not required. In cases where the validity of a classification for tax purposes is challenged, the test is whether the classification is based upon some legitimate distinction between the classes that provides a non-arbitrary and "reasonable and just" basis for the difference in treatment. Stated alternatively, the focus of judicial review is upon whether there can be discerned "some concrete justification" for treating the relevant group of taxpayers as members of distinguishable classes subject to different tax burdens. When there exists no legitimate distinction between the classes, and, thus, the tax scheme imposes substantially unequal tax burdens upon persons otherwise similarly situated, the tax is unconstitutional.

*City of Harrisburg v. Sch. Dist. of City of Harrisburg*, 710 A.2d 49, 53 (Pa. 1998) (citations omitted). With regard to property taxation, our Supreme Court has explained:

> First, all property in a taxing district is a single class, and, as a consequence, the Uniformity Clause does not permit the government, including taxing authorities, to treat different property sub-classifications in a disparate manner. Second, this prohibition applies to any intentional or systematic enforcement of the tax laws, and is not limited solely to wrongful conduct.

9

*Valley Forge Towers Apartments N, LP v. Upper Merion Area Sch. Dist.*, 163 A.3d 962, 974 (Pa. 2017) (citations omitted). Thus, a uniformity inquiry in the context of real property taxation incorporates the equal protection inquiry, but also requires more stringent review of a taxing authority's methods and actions. *Downingtown*, 913 A.2d at 201 n.9. These kinds of disputes are not analyzed under the traditional rational basis standard usually associated with equal protection jurisprudence: "[P]roperty taxes are 'different' because 'real property is the classification,' with the consequence . . . that all real estate in a taxing district is constitutionally entitled to uniform treatment." *Valley Forge Towers*, 163 A.3d at 977 (quoting *Clifton v. Allegheny Cnty.*, 969 A.2d 1197, 1212 (Pa. 2009)).

"Where there is a conflict between maximizing revenue and ensuring that the taxing system is implemented in a non-discriminatory way, the Uniformity Clause requires that the latter goal be given primacy. Notably, however, the two objectives do not necessarily conflict." *Valley Forge Towers*, 163 A.3d at 980 (citing *Clifton*). Nevertheless, a taxpayer posing a constitutional challenge bears the burden to prove that the taxing authority engaged in constitutionally prohibited conduct, because it is well-settled law that the acts of a governmental entity are presumed constitutional. *Bethlehem*, 225 A.3d at 218.

In *In re Appeal of Springfield School District*, 101 A.3d 835 (Pa. Cmwlth. 2014), *overruled in part on other grounds by Valley Forge Towers*, 163 A.3d at 975 n.13, the taxpayer bought Delaware County properties in 2011 for a combined price of $11.4 million, at which time the properties were assessed at roughly $5 million (combined) based on the last countywide assessment in 1998. *Springfield*, 101 A.3d at 838. The school district appealed to the county assessment board seeking a reassessment based on the purchase price. *Id.* The board declined

10

to increase the assessment and the school district further appealed to the trial court. *Id*. at 839. At an evidentiary hearing before the trial court, the school district's executive director of operations testified that he selected property assessments to appeal where a property's recent sales price, which he obtained from monthly real estate transfer tax reports, exceeded the property's implied market value (based on the 1998 assessment and the annual county CLR) by at least $500,000; the difference resulted in $9,000-$11,000 in potential additional revenue, which justified the costs of incurring the appeal. *Id*. at 840.

The trial court in *Springfield* upheld the school district's method of selecting properties for assessment appeals and, after recalculating using a figure just under the recent purchase price and the applicable CLR, assigned the properties a new combined assessment of roughly $8 million. 101 A.3d at 841. This Court affirmed, finding no constitutional uniformity violation because the evidence did not establish wrongful conduct or deliberate and purposeful discrimination on the school district's part. *Id*. at 848-49. This Court also found no constitutional infirmity in the school district's $500,000 threshold, even though its application in practice resulted in only commercial properties' assessments being appealed because the assessments of most residential properties in the school district would not meet the threshold; at that time, this Court did not construe uniformity as requiring "equalization across all potential sub-classifications of real property (for example, residential versus commercial)." *Id*. (quoting *Downingtown*).

The Supreme Court denied the *Springfield* taxpayer's petition for allowance of appeal. *In re Appeal Springfield Sch. Dist.*, 121 A.3d 497 (Pa. 2015). However, our Supreme Court subsequently scrutinized *Springfield* in deciding *Valley Forge Towers*. In *Valley Forge Towers*, the school district did not consider

11

recent sales within its boundaries, but retained an outside consultant to conduct a review and report on properties to be targeted for appeal. 163 A.3d at 966. Based on the consultant's recommendation, the school district consciously limited its appeals to commercial properties, including apartment complexes, because those properties tended to have higher values than single-family homes, and their reassessments would generate greater revenue increases. *Id.*

In *Valley Forge Towers*, the trial court approved the school district's selection method and this Court affirmed. However, our Supreme Court reversed, finding the school district's strategy violated constitutional principles because "a taxing authority is not permitted to implement a program of only appealing the assessments of one sub-classification of properties, where that sub-classification is drawn according to property type—that is, its use as commercial, apartment complex, single-family residential, industrial, or the like." 163 A.3d at 978. The Supreme Court also clarified that a challenge to a school district's assessment appeal process need not show that the school district engaged in outright wrongful or discriminatory conduct, because constitutional violations can still arise from an outwardly neutral yet "intentional or systematic method of enforcement of the tax laws." *Id.* at 975 (discussing and quoting *Downingtown*, 913 A.2d at 201 & n.10).

In that respect, the Supreme Court disapproved of this Court's approach in *Springfield*, which interpreted the relevant precedent to permit differentiation based on property type and to require a taxpayer to show wrongful conduct or an intent to discriminate on the part of the school district. *Valley Forge Towers*, 163 A.3d at 974-75 & n.13. However, the *Valley Forge Towers* Court stressed that it did *not* disapprove of this Court's holding that the *Springfield* school district's selection

12

of properties for assessment appeals based on recent sales prices and use of a monetary threshold did not violate constitutional principles:

> Our disapproval of *Springfield*'s interpretation of this Court's precedent should not be equated to disagreement with the result it reached. In *Springfield*, the property owners challenged a school district's policy of using . . . a monetary threshold to decide which properties to appeal. They did not allege a scheme involving disparate treatment of property sub-classifications drawn according to property type . . . .
>
> . . . .
>
> We pause at this juncture to clarify that nothing in this opinion should be construed as suggesting that the use of a monetary threshold—such as the one challenged in *Springfield*—or some other selection criteria would violate uniformity if it were implemented without regard to the type of property in question . . . . Such methodologies are not presently before the Court.

*Valley Forge Towers*, 163 A.3d at 975 n.13 & 979 (citation omitted).

Since *Valley Forge Towers*, this Court has held that a school district's use of recent sales prices and a cost-benefit formula to determine which property assessments to appeal will satisfy constitutional criteria so long as the strategy is implemented without regard for property type or classification.[9] In *Punxsutawney Area School District v. Broadwing Timber, LLC* (Pa. Cmwlth., No. 1209 C.D. 2018, filed Oct. 29, 2019), 2019 WL 5561413 (unreported), *appeal denied*, 234 A.3d 399

---

[9] We have also upheld school district assessment appeal practices where the school district did not use recent sales reports, but instead retained outside consultants to survey and select property assessments for appeal, so long as the overall method of selection did not violate the conclusions and holding of *Valley Forge Towers*. *See, e.g.*, *E. Stroudsburg Area Sch. Dist. v. Meadow Lake Plaza, LLC* (Pa. Cmwlth., No. 371 C.D. 2018, filed Oct. 17, 2019), 2019 WL 5250831 (unreported). We cite unreported decisions of this Court as persuasive authority pursuant to our Internal Operating Procedures. *See* 210 Pa. Code § 69.414(a).

(Pa. 2020), the school district's business administrator flagged a real estate transfer tax payment of over $33,000 resulting from the sale of a previously tax-exempt property; after a review, the school district appealed the property's assessment. *Id*., slip op. at 5, 2019 WL 5561413, at *2. The business administrator testified that to select properties for appeals, she reviewed monthly real estate transfer tax payments from recent property sales, and when she saw a transaction with a transfer tax above the average amount of about $1000, regardless of the property's type or classification, she flagged it for the school district to review. *Id.*, slip op. at 4-5, 2019 WL 5561413, at **2-3. The business administrator acknowledged that this approach so far had not resulted in a residential property assessment being appealed, but stated that the school district would pursue such an appeal "if a residential property transferred at a high enough sale to provide that type of realty transfer tax." *Id.*, slip op. at 7, 2019 WL 5561413, at *3.

The trial court in *Punxsutawney* upheld the school district's method and valuation of the property. *Punxsutawney*, slip op. at 8-10, 2019 WL 5561413, at *4. The trial court rejected the taxpayer's claim that the school district's method created an unconstitutional disparate impact on commercial properties, reasoning that the concept of disparate impact "has not been given broad application outside the civil rights context" and that *Valley Forge Towers* gave "no indication that it meant to expand [disparate impact's] scope to encompass tax assessment appeals." *Id.*, slip op. at 10, 2019 WL 5561413, at *5 (quoting trial court's opinion).

We affirmed the trial court's decision in *Punxsutawney*, holding that even though the school district's process was not based on a specific formula, it was "based on a financial analysis implemented without regard to a property's type or ownership and is of the type approved by *Valley Forge Towers*." *Punxsutawney*,

14

slip op. at 20, 2019 WL 5561413, at *8. Moreover, although the school district's process had not yet resulted in a residential property being selected for appeal, that possibility had not been foreclosed; therefore, the fact that only commercial properties had so far been selected for appeal did not create an as-applied unconstitutional classification based on disparate impact. *Id*., slip op. at 21-22, 2019 WL 5561413, at *9.

In *Punxsutawney*, the taxpayer's application for a further appeal to the Supreme Court of Pennsylvania was denied. *See Punxsutawney Area Sch. Dist. v. Broadwing Timber, LLC*, 234 A.3d 399 (Pa. 2020). However, the Supreme Court accepted the taxpayer's appeal in *Kennett Consolidated School District v. Chester County Board of Assessment Appeals*, 228 A.3d 29 (Pa. Cmwlth.), *appeal granted*, 240 A.3d 611 (Pa. 2020). In *Kennett*, the school district did not use recent sales prices, instead retaining an outside consultant to review all assessments within the school district for appeal potential with specific instructions that the type or classification of property was not to be a factor in the analysis. *Id*. at 31. The consultant identified 13 properties that might be underassessed by at least $1 million based on the consultant's analysis of market values. Of those, the school district appealed 12, including commercial property owned by Autozone Development Corporation (Autozone). *Id*. at 32. The Board declined to reassess the property and the school district appealed to the trial court, at which point Autozone raised a constitutional challenge in the context of a motion to quash. *Id*.

The trial court denied Autozone's motion to quash, and we affirmed based on *Valley Forge Towers*, *Springfield*, and *Punxsutawney*. *Kennett*, 228 A.3d at 37-41. Because the evidence established that the school district used a purely monetary approach and had not intentionally selected property assessments to appeal

15

based on property type (commercial vis-à-vis residential), we held no constitutional violation occurred, reasoning that the school district's "disregard of property type cannot logically equate to unlawful treatment based upon property type." *Id.* at 39. We also rejected Autozone's as-applied or disparate impact claim: "The mere fact that all appealed properties were commercial does not *per se* create a violation of the Uniformity Clause." *Id.* The Supreme Court accepted the following questions for review:

> (1) Did the [s]chool [d]istrict violate the requirements of the Uniformity Clause by subdividing real estate in the [d]istrict based [upon] the money value [of] the property and imposing unequal tax burdens on properties with actual market value of more than $1,000,000?
>
> (2) Did the [s]chool [d]istrict violate the requirements of the Uniformity Clause by implementing an assessment appeal selection system which subjected only commercial properties to disparate treatment in operation and effect?
>
> (3) Did the Commonwealth Court err by shifting the burden of proof and holding taxpayers to an impossible standard that this Court has specifically rejected, namely by requiring taxpayers to prove that the [s]chool [d]istrict intended to discriminate against a sub-class of taxpayers?

*Kennett Consol. Sch. Dist. v. Chester Cnty. Bd. of Assessment Appeals*, 240 A.3d 611-12 (Pa. 2020).

The facts and issues here differ in some aspects from *Kennett* and render two of the three questions accepted for review there inapplicable to this case. The second question accepted for review by the Supreme Court in *Kennett* concerns the fact that facially neutral selection practices have tended to create a disparate impact on commercial properties. However, Berkshire's specific challenge here is

to the District's use of recently sold properties as a basis for the selection process: "the challenge is to the manner in which the [D]istrict selected assessments to appeal – considering only a subclass of properties that were under new ownership – which violates both the federal Equal Protection Clause and Pennsylvania's Uniformity Clause." Berkshire's Reply Br. at 6. For purposes of this appeal, then, our analysis is not necessarily impacted by the second question under consideration by the Supreme Court in *Kennett*.

The third question accepted by the Supreme Court in *Kennett* may be read as a request for clarification by the Supreme Court of the taxpayer's burden of proof with regard to a school district's intent in the context of constitutional challenges to assessment appeal practices. Here, the District acknowledges that it begins its process with recently sold properties based on information from the monthly STEB reports. There is no evidence of any outright intent on the District's part to discriminate by means of its method, but the Supreme Court made clear in *Valley Forge Towers* that a deliberate and systematic practice of selection and appeal may nevertheless violate constitutional principles; in the event the District's method of using recently sold properties as the basis for its selection process violates such principles, it may be invalid regardless of what the Supreme Court may decide in *Kennett*. *See Valley Forge Towers*, 163 A.3d at 975. For purposes of this appeal, then, our analysis is not necessarily impacted by the third *Kennett* question under consideration by the Supreme Court.

The first question accepted by the Supreme Court in *Kennett*, however, challenges a school district's use of a monetary threshold as part of a cost-benefit analysis to determine which property assessments to appeal. Here, Berkshire challenges the District's practice of appealing assessments for recently sold

17

properties with a differential of at least $150,000 between the current assessed value and the recent sales price, asserting that regardless of the convenience to the District of publicly available sales price information and the practicality of a cost-benefit analysis, any method that differentiates properties based on their value violates constitutional principles. Berkshire's Br. at 18-25; Berkshire's Reply Br. at 11-13.

In *Valley Forge Towers*, our Supreme Court observed that selection methods based on a monetary threshold, as used in cases like *Springfield*, were not before it in that case. *Valley Forge Towers*, 163 A.3d at 979. Notably, however, the Supreme Court also stated that its disapproval of this Court's approach in *Springfield* concerning the school district's intent and differentiation by property type "should not be equated to disagreement with the result [this Court] reached" by upholding the school district's use of a monetary threshold to decide which properties to appeal. *Id*. at 975 n.13. As such, the *Valley Forge Towers* Court implied that so long as a school district's selection method did not discriminate on the basis of property type, use of a monetary formula would not amount to a *per se* constitutional violation. *Id*. at 975 n.13, 979. Further, the Court noted in *Valley Forge Towers* that taxing districts have discretion to determine their assessment appeal policies so long as those policies do not violate constitutional principles. *Id*. at 980.

The current law of Pennsylvania is that a school district's monetary method for selecting property assessments to appeal is within its discretion so long as that method does not differentiate properties based on property type (commercial vis-à-vis residential) or another constitutionally infirm basis. *Valley Forge Towers*, 163 A.3d at 978. As the *Valley Forge Towers* Court recognized, "using public funds wisely and obtaining needed revenues are important objectives" that "do not

18

necessarily conflict" with constitutional considerations. *Id*. at 979-80. Since *Valley Forge Towers*, we have explained:

> We find nothing in our Supreme Court's analysis in *Valley Forge [Towers]* that precludes application of a reasonable monetary threshold for assessment appeals, based on an estimate of the minimum potential revenue gain that will make a tax assessment appeal cost-effective. Indeed, a taxing district's selection of a property for an assessment appeal that failed to take into account whether the appeal was likely to be cost-effective might well be fiscally irresponsible.
>
> . . . .
>
> Moreover, the use of a reasonable blind monetary screen such as the $10,000 threshold [used by the district here] was expressly approved by this Court in *Springfield* and implicitly approved by our Supreme Court in *Valley Forge [Towers]*. We conclude that the $10,000 threshold is reasonable and does not violate the uniformity requirement of the Pennsylvania Constitution[.]

*E. Stroudsburg Area Sch. Dist. v. Meadow Lake Plaza, LLC* (Pa. Cmwlth., No. 371 C.D. 2018, filed Oct. 17, 2019), slip op. at 11, 13, 2019 WL 5250831, at \*\*5-6 (unreported).

Here, Berkshire focuses on the constitutionality of the District's use of recent sales prices to select property assessments for appeal; this is an issue of first impression in the context of our precedents, which since *Valley Forge Towers* have focused on (and prohibited) differentiation by type of property. Berkshire argues that the District's use of recent sales prices as a basis to select assessments for appeal amounts to an improper classification resulting in unfair treatment of new property owners as compared with owners whose property has not recently changed hands

19

and therefore come to the District's attention. There is a difference, however, between selection based on property type, a qualitative approach that *Valley Forge Towers* bars, and selection based on recent sales prices, which are quantitative and reflective of a property's accurate present value regardless of its type. Because the District's method is purely quantitative in nature, beginning with type-neutral listings of recent sales transactions in the monthly STEB reports, we find it does not present the type of constitutional infirmities present in *Valley Forge Towers*.

While acknowledging constitutional requirements, our Supreme Court has consistently recognized that perfection in property assessment may not be possible and that uniformity considerations will not be offended by an otherwise acceptable "salutary methodology to better assure that each taxpayer would pay no more nor less than his fair share, to the extent that such fair share [is] reasonably susceptible of ascertainment." *Downingtown*, 913 A.3d at 205. "Taxation . . . is not a matter of exact science; hence absolute equality and perfect uniformity are not required to satisfy the constitutional uniformity requirement." *Clifton*, 969 A.2d at 1211. This realistic approach dovetails with the Court's recognition that while constitutional principles are primary, the practical fiscal concerns of a school district still matter and may not be ignored. *Valley Forge Towers*, 163 A.3d at 980 (citing *Clifton*).

Applying this principle, we conclude that the District's method of selecting properties for assessment appeals comports with the Commonwealth's present jurisprudence on the subject of property assessment uniformity. Using recent sales prices as part of the selection of properties for appeals is a quantitative method of reasonably ascertaining a property owner's fair share of the tax burden, because such figures represent the kind of evidence of market value that a school

20

district must show when it appeals an assessment. *See Aetna Life Ins. Co. v. Montgomery Cnty. Bd. of Assessment Appeals*, 111 A.3d 267, 283 (Pa. Cmwlth. 2015) ("evidence of private sales is admissible to determine fair market value").

Further, as applied by the District, this method employs a purely economic approach that is practical for the District yet does not improperly differentiate based on property type, which is the type of approach our Supreme Court condoned in *Valley Forge Towers* and which this Court subsequently accepted in *Punxsutawney* and *East Stroudsburg*. As such, we agree with the trial court that the District's method did not violate either the Equal Protection Clause of the U.S. Constitution or the Uniformity Clause of the Pennsylvania Constitution.

Berkshire argues, however, that the District's method should be held to the same standard as the assessments based on recent property sales that were found to violate equal protection principles in *Allegheny Pittsburgh Coal*. We reject this argument. Berkshire correctly asserts that the District, like the county assessor in *Allegheny Pittsburgh Coal*, is a government entity required to act within constitutional constraints. *See* Berkshire's Br. at 14-17. However, as the trial court explained, while a county assessor has the authority to set and change assessments, a school district may only appeal assessments. *See* Trial Ct. Op. at 7-8. The constitutional problem in *Allegheny Pittsburgh Coal* arose from the county assessor's unilateral reassessments based on recent sales. Here, the District's only recourse to seek adjustment of outdated property assessments is by bringing appeals at its own cost, and it must prove its case in each such appeal with substantial evidence of record before an adjudicatory board that may or may not agree with the District's position. In *Kennett*, for example, the board denied the school district's appeal and refused to increase the assessment on the taxpayer's property. 228 A.3d

21

at 32. Thus, the District must consider the cost effectiveness of each assessment appeal it decides to undertake.

Thus, to the extent that we find the District's method here satisfies Pennsylvania's uniformity requirements as set forth in *Valley Forge Towers*, the fact that the assessor in *Allegheny Pittsburgh Coal* used recent sales as a basis for unilateral reassessments does not make that case controlling here, and the trial court did not err in distinguishing it.

Berkshire also asks this Court to consider two uniformity cases not addressed by the trial court, *Mount Airy #1, LLC v. Pennsylvania Department of Revenue*, 154 A.3d 268 (Pa. 2016), and *Nextel Communications, Inc. v. Department of Revenue*, 171 A.3d 682 (Pa. 2017). Berkshire cites these cases in support of its position that differential tax treatment based on the price or value of the thing being taxed, here the cost-benefit $150,000 threshold used by the District to appeal assessments, violates uniformity principles.

In *Mount Airy #1*, our Supreme Court considered a challenge to a provision of the Pennsylvania Race Horse Development and Gaming Act, 4 Pa.C.S. §§ 1101-1904, that essentially created a variable-rate tax on casinos, in effect "fashioning one rate for non-Philadelphia casinos with slot machine revenue below $500 million and another for non-Philadelphia casinos with slot machine revenue greater than $500 million." 154 A.3d at 276. In *Nextel*, the Court considered a challenge to a provision of the Tax Reform Code of 1971, Act of March 4, 1971, P.L. 6, *as amended*, 72 P.S. §§ 7101-10004, that allowed corporations with taxable income under $3 million to deduct net losses from prior years while refusing the same advantage to corporations with taxable income in excess of $3 million. 171 A.3d at 685. Thus, both cases involved the application of differing tax *rates* based

on the amount or value of the thing being taxed, an issue not present in this case. Those cases are also distinguishable because the taxable properties at issue were slot machine revenue (*Mount Airy #1*) and corporate income tax (*Nextel*), which are subject to their own specific statutory taxation schemes and bodies of law. This case concerns the methods by which school districts may select property tax assessments for appeal, and there is ample on-point precedent, not least of which is *Valley Forge Towers*.

Also, the disparate treatment in *Mount Airy #1* and *Nextel* was based solely on revenue or income amounts. Here, the recent sales price of a real estate property is not the sole basis the District uses to select assessments to appeal. The District begins with that information, applies the CLR, compares the resulting figure with the prior assessment, and only appeals if the difference exceeds $150,000. By contrast, a property may sell this year for millions of dollars, but if it previously changed hands within the past few years, it may already have been reassessed. If so, the differential may not exceed $150,000, and it will not be selected for appeal. Thus, the market value or recent sales price alone is not the basis for any differential treatment by the District. For these reasons, *Mount Airy #1* and *Nextel* are neither on-point nor controlling here, and Berkshire has not established that the District's appeal selection method violates constitutional principles.

## IV. Conclusion

Based on the foregoing discussion, we affirm the trial court's order overruling Berkshire's objections to the District's assessment appeal.

_____
CHRISTINE FIZZANO CANNON, Judge

23

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

GM Berkshire Hills LLC and     :
GM Oberlin Berkshire Hills LLC,     :
            Appellants     :
                              :
          v.     :
                              :
                              :
Berks County Board of Assessment     :     No. 930 C.D. 2020
and Wilson School District     :

## O R D E R

AND NOW, this 8th day of July, 2021, the order of the Court of Common Pleas of Berks County is AFFIRMED.

_____
CHRISTINE FIZZANO CANNON, Judge